(67 South. 553)

No. 20913.

VICKSBURG, A. & S. RY. CO. v. LOUISIANA & A. R. CO.

(Feb. 8, 1915.)

*(Syllabus by Editorial Staff.)*

1. APPEAL AND ERROR &—47—JURISDICTION —AMOUNT—CLAIM FOR DAMAGES.

A suit to expropriate servitude of passage for its railroad across that of defendant, where the land affected was worth less than $100, but in which defendant seriously and in good faith claimed $10,000 damages for future losses in collisions, loss of time in stopping trains, and loss from having to reduce the weight of trains, owing to the steepness of the grade, is one for more than $2,000, so as to bring the defendant's appeal within the jurisdiction of the Supreme Court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 202-225; Dec. Dig. &— 47.]

2. EMINENT DOMAIN &—10—EXPROPRIATION— DELEGATION OF POWER — "RAILROAD" — "COMMON CARRIER"—"PLANT UTILITY."

Const. art. 271, provides that any railroad corporation may cross any other railroad, and shall receive and transport its passengers and freight. Article 272 declares railroad companies to be "common carriers," and article 230, exempts certain railroads from taxation for ten years, on certain conditions. The statute, as amended by Act No. 227 of 1902, provides that, whenever any corporation organized under the laws of the state to construct a railroad cannot agree with the owner of land, it may expropriate it. Plaintiff, a corporation, was organized under the laws of the state to operate a railroad extending from the pit of a gravel company, a distance of eight miles, to a connection with another railroad, chiefly to carry gravel, and not to carry passengers, and three-fourths of its organizers and stockholders holding the majority of its capital stock, were stockholders in the gravel company. *Held*, that plaintiff was an independent concern, and a railroad entitled to expropriate a crossing; that it could not be both a "common carrier" and a mere "plant utility," for what is meant by a railroad being a mere plant utility is that it is not a common carrier; that the fact of its close relation to an industrial plant did not detract from its character as a "railroad," within its definition as a road specially laid out and graded, having parallel rails of iron or steel for the wheels of carriages or cars, drawn by steam or other motive power to run upon, a road to transport passengers or freight, or both; and that the constitutional provisions were not intended to define the meaning of the expropriation statute.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 35-48; Dec. Dig. &—10.

For other definitions, see Words and Phrases, First and Second Series, Common Carrier; Railroad.]

3. STATUTES &—188—CONSTRUCTION—TAKING WORDS IN USUAL MEANING.

The words of a statute are to be taken according to their popular meaning, in the absence of anything to the contrary in the statute itself.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 276; Dec. Dig. &— 188.]

4. EMINENT DOMAIN &—128—EXPROPRIATION —RAILROAD CROSSING ANOTHER ROAD.

On a railroad's expropriation of a servitude of passage across another railroad, future damages from the crossing, as the result of collisions, loss of time in stopping trains in conformity with the rules of the Railroad Commission, and reduction in the weight of trains owing to the steepness of the grade at the crossing and the difficulty in starting from a stop, were not recoverable.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 349-351; Dec. Dig. &— 128.]

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, *Judge.*

Suit by the Vicksburg, Alexandria & Southern Railway Company against the Louisiana & Arkansas Railroad Company. Judgment for plaintiff, and defendant appeals. Motion to dismiss denied, and judgment affirmed.

Henry Moore and Henry Moore, Jr., both of Texarkana, Ark., and H. H. White and R. F. White, both of Alexandria, for appellant. Blackman, Overton & Dawkins, of Alexandria, for appellee.

### On Motion to Dismiss.

PROVOSTY, J. [1] The plaintiff company seeks in this suit to expropriate a servitude of passage for its railroad across the railroad of the defendant company. The appeal is by defendant, and motion is made to dismiss it on the ground that the amount involved falls below the lower limit of the jurisdiction of this court. That limit is $2,000, and the location of the desired crossing is in the open country where land is worth about $10 an acre, so that the land itself to be affected by the servitude is admittedly worth less than $100; but defendant claims $10,000 damages which it alleges it will suffer in the future from this crossing as the result of collisions, and from loss of time in stopping trains in conformity with the rules of the Railroad Commission, and from having to reduce the weight of trains owing to the steepness of the grade at this crossing and the consequent difficulty of starting again after a stop.

These elements of damage, says plaintiff, cannot be taken into consideration in computing the amount involved in the suit, because they cannot serve as the basis for a demand in a suit of this kind; that this court so decided in Kansas City, S. & G. Ry. Co. v. La. W. R. Co., 116 La. 178, 40 South. 627, 5 L. R. A. (N. S.) 512, 7 Ann. Cas. 831.

That decision, and any others, more or less in point, by this court and other courts, in suits between other parties, cannot preclude defendant from bringing forward this demand. The argument reduces itself, therefore, to this: That because the demand may prove to be unfounded it is not involved in the suit, and cannot serve as a basis for jurisdiction. But how could its groundlessness be ascertained without jurisdiction being entertained?

We will not say that a demand may not be so utterly and manifestly baseless as to be unserviceable for purposes of jurisdiction; nor even that a legal proposition may not be so perfectly plain, or have become so fully settled by repeated decisions, that the making it the basis of a demand might not be looked upon as a mere subterfuge for conferring jurisdiction, and be treated as such. But this cannot yet be said of the legal proposition underlying the said demand for damages in this suit. Said demand is being urged seriously, and not as a mere pretense.

The motion to dismiss is overruled.

### On the Merits.

[2, 3] Defendant denies that plaintiff is a railroad corporation within the meaning of the statute authorizing railroad corporations to invoke the power of eminent domain for expropriating property. In support of that denial defendant avers that plaintiff's railroad is not to be a genuine railroad, but a mere plant utility of the Tioga Gravel Company, and that the plaintiff corporation was organized merely as a subterfuge for expropriating for the benefit of said gravel company across the railroad of defendant a right of way which said gravel company would not otherwise have been entitled to for its tramroad, and that, if this is not the case, still plaintiff is not a railroad corporation within the meaning of said statute, because by express provision of plaintiff's charter plain-

tiff is not to carry both freight and passengers, but freight only.

Plaintiff is organized under the laws of this state. Its railroad is to have a roadbed, cross-ties, steel rails, freight cars, and locomotives, and is to be operated like any ordinary railroad in the service of the public, carrying freight only, however. It is to extend from the gravel pit of the Tioga Gravel Company, at Tioga, La., to Pineville, La.—a distance of eight miles—there to connect with the Iron Mountain Railroad. True, the idea of organizing the plaintiff company was suggested by the fact that there would be a large quantity of gravel to be carried for the Tioga Gravel Company—30 to 50 car loads daily; and true, also, 6 of the 8 organizers and stockholders of the plaintiff company, owning $98,800 of its capital stock of $100,000, are stockholders in the gravel company; but 8 of the 15 stockholders of the gravel company, owning $120,-800 of its capital stock of $200,000, are not stockholders of the plaintiff company; and the testimony is to the effect that, as an enterprise entirely independent of the gravel company, though not, of course, of its patronage, the railroad promises to be a paying proposition.

The two companies, being separately incorporated, with different stockholders, are distinct and separate both in law and in fact. Indeed, we find in the brief of the defendant what is practically an admission of the autonomous character of the plaintiff company, to wit: "Defendant admits that the plaintiff is a common carrier." Plaintiff cannot be both a common carrier and a mere plant utility, for what is meant by a railroad being a mere plant utility is that it is not a common carrier.

A close relation between an industrial plant and a tap railroad, such as is exhibited between the plaintiff company and the gravel company in this case, does not detract from the character of the railroad as a genuine railroad. That question has been so exhaustively treated by the Supreme Court of the United States in the Tap Line Cases that anything we might undertake to say here in that connection would be mere idle repetition. U. S. v. La. & Pac. Ry. Co., 234 U. S. 1, 34 Sup. Ct. 741, 58 L. Ed. 1185.

We conclude, then, that the plaintiff is an independent concern and a railroad corporation; and we pass to the inquiry whether the fact of its carrying freight only, and not passengers also, deprives it of its character of a railroad corporation within the meaning of the statute authorizing railroad corporations to expropriate. The last amendatory act on this subject is, we think, Act No. 227, p. 457, of 1902. It reads:

"Whenever the state or any political corporation of the same, created for the purpose of exercising any portion of the governmental powers of the same, or the board of administrators or directors of any charity hospital or any board of school directors thereof, or any corporation constituted under the laws of this state for the construction of railroads, plank roads, turnpike roads, or canals for navigation, or for the construction and operation of waterworks or sewerage to supply the public with water and sewerage, or for the purpose of transmitting intelligence by magnetic telegraph," cannot agree with the owner of land, it shall have the right to expropriate.

This statute does not require that the corporation shall carry both freight and passengers, but simply that it shall have been organized for the construction of a railroad; and, since the rule is that the words of a statute are to be taken according to their popular meaning, in the absence of any indication to the contrary in the statute itself, we have to go to the dictionaries for the definition of the term "railroad," and we transcribe from them, as follows:

"A railroad is a road specially laid out and graded, having parallel rails of iron or steel for the wheels of carriages or cars, drawn by steam or other motive power to run upon." Rapalge & L. L. Dict.

"A railroad is a road graded and having rails of iron or other material for the wheels of railroad cars to run upon." Bouvier, L. Dict.

"A railroad is a road or way on which iron rails are laid for wheels to run on for the conveyance of heavy loads in vehicles." Webster's Dict.

"A road upon which are laid one or more lines of rails to guide and facilitate the movement of vehicles designed to transport passengers or freight or both." Century Dict.

According to this, plaintiff's railroad is most unquestionably a railroad within the meaning of the said statute.

The only case in our reports bearing directly upon the question of what is a railroad is Shreveport Traction Co. v. Kansas City Ry. Co., 119 La. 759, 44 South. 457. In that case the question was whether a street railway is a railroad. Defendant cites the case as having held the negative of that question, and plaintiff cites it as having held the affirmative. Plaintiff is unquestionably right. While the court sought to fortify its decision by adducing the fact that the particular street railroad in question was authorized by its charter to carry freight, that circumstance was not the determinative factor in the case, as is made perfectly evident by the decision on rehearing, where the court said:

"As to the right of crossing the tracks of other railroads, * * * there is no difference in principle between a street railroad and a commercial railroad."

In opposition to this, defendant cites Massachusetts Loan Co. v. Hamilton, 88 Fed. 588, 32 C. C. A. 46, and Thompson-Houston Electric Co. v. Simond, 20 Or. 60, 25 Pac. 147, 10 L. R. A. 251, 23 Am. St. Rep. 86, a Texas decision; but of course, our own decision controls, and, moreover, such a thing might well be as that a street railway should not be a railroad within the meaning of said statute, and yet a concern like that of plaintiff be a railroad, for several of the reasons usually assigned why a street railway should not be deemed to be, properly speaking, a railroad are totally inapplicable to plaintiff's railroad, which by no possibility can be deemed to be anything other than a railroad, as that term is generally understood.

As showing that a railroad carrying only freight is not a railroad within popular acceptation, defendant cites the note in 29 Am. & Eng. Railroad Cases, 53; but we find nothing in that note countenancing that contention, except, possibly, the reference to two cases as having held that a railroad may be compelled to carry passengers, neither of which cases, on investigation, is found to have involved the question of carrying passengers, but only whether the railroad company there in question could discontinue some particular service due under its franchise.

Defendant cites, also, Amos Kent Lumber Co. v. Tax Assessor, 114 La. 866, 38 South. 587, and La. & Ark. Ry. Co. v. State Board of Appraisers, 135 La. 69, 64 South. 985. In the former of these cases we find absolutely nothing that has any bearing upon our question. In 'the other case a log road was claiming to be a railroad, and to be, as such, entitled to the constitutional exemption from taxation, and the court did say, by way of expressing the idea that the said road was a mere plant utility, and not a public carrier, that "it surely did not carry passengers." But the question of whether a railroad ceases to be such in popular contemplation the moment it ceases to carry passengers and confines itself to freight was not being considered, and that expression was not intended to be used in connection with it.

Plaintiff, on the other hand, cites Kansas City, S. & G. Ry. Co. v. La. W. R. Co., 116 La. 178, 40 South. 627, 5 L. R. A. (N. S.) 512, 7 Ann. Cas. 831, where the right to expropriate a right of way for a spur track destined to transport freight only was recognized by this court. The following are in point:

In Railroad Co. v. Cobb, 66 Or. 587, 135

Pac. 181, it was held that a statute authorizing any railroad to condemn land includes a company organized to construct a short line carrying only freight.

"The right of eminent domain is available by legislative grant to a railroad corporation which has constructed a railroad for the carriage of freight to and from" certain "lime kilns * * * and goods to and from stores" of a certain "place." Farnsworth v. Lime Rock Co., 83 Me. 440, 22 Atl. 373.

Property may be condemned "by a mining company for the construction of a railroad to be used for the transportation of coal from its mines," since such a use is "of a public nature." New Central Coal Co. v. G. C. Coal & Iron Co., 37 Md. 537.

"The mere fact that a railroad company limits the use of a switch track to the carriage of property does not make the use of the track private." Brown v. Chicago G. W. Ry. Co., 137 Mo. 529, 38 S. W. 1099.

Defendant contends, however, that in Louisiana, no matter what might be the case elsewhere, a corporation, in order to be a railroad corporation, must carry both freight and passengers, because the Constitution of the state so provides; and in support of that contention cites the following articles of the Constitution:

"Art. 271. Any railroad corporation or association organized for the purpose shall have the right to construct and operate a railroad between any points within this state, and connect at the state line with railroads of other states. Every railroad company shall have the right with its road to intersect, connect with or cross any other railroad, and shall receive and transport each other's passengers, tonnage and cars loaded or empty, without delay or discrimination.

"Art. 272. Railways heretofore constructed, or that may hereafter be constructed in this state, are hereby declared public highways, and railroad companies common carriers."

"Art. 230. There shall also be exempt from taxation for a period of ten years from the date of its completion any railroad or part of such railroad that may hereafter be constructed and completed prior to January 1st, 1904; provided, that when aid has heretofore been voted by any parish, ward, or municipality to any railroad not yet constructed, such railroad shall not be entitled to the exemption from taxation herein established, unless it waives and relinquishes such aid or consents to a resubmission of the question of granting such aid to a vote of the property taxpayers of the parish, ward, or municipality, which has voted the same, if one-third of such property taxpayers petition for the same within six months after the adoption of this Constitution."

The provision of this article 271 to the effect that connecting railroads shall receive and transport each other's passengers undoubtedly carries with it to some extent the implication that, within the intendment of the article, a railroad is a concern that carries passengers. And such a thing might well be as that a railroad which does not carry passengers should be excluded from the benefit of the tax exemption provided for by article 230, as not being such a railroad as is contemplated by the Constitution (a point upon which we, naturally, express no opinion); but those articles were manifestly not intended to define what shall constitute a railroad corporation within the meaning of the statutes authorizing corporations of that kind to expropriate property, or to prescribe essential characteristics for the railroads of those corporations; and it is perfectly safe to say that, if these articles had had the effect of repealing, or modifying in any way, those statutes, such result would have been wholly unintentional on the part of the framers of those articles, and be merely one of those freaks of legislation that occasionally crop out to the surprise as much of the persons responsible for them as of the public at large.

We might go even further, and say that, if plaintiff were dependent upon those articles for its right to demand this crossing, it might perhaps have to qualify under article 271 by carrying passengers; but the source of plaintiff's right to this crossing is not this article 271, but is the said statutes which, conferring unqualifiedly the right to expropriate for a right of way, confer necessarily the right to expropriate this crossing if necessary for a passage. Indeed, "no express legislative authority is required in such cases." Shreveport Traction Co. v. Kansas City

Ry. Co., 119 La. 777, 44 South. 457, on rehearing.

Let it be noted that, if these articles were inconsistent with the theretofore existing legislation by which the right to expropriate property was conferred upon railroads not carrying passengers, they would be in like manner inconsistent with, and therefore preclude, any future legislation conferring such right; so that the situation would be that, while the Legislature was at liberty to extend this right to expropriate to all concerns in which the public might have an interest, such as canals, plank roads, and turnpikes, it would be absolutely prohibited from conferring it upon such a public utility as a freight carrying railroad. A construction bringing about such an anomalous situation is not to be thought of, unless absolutely unavoidable; and it is easily avoided by reading article 271 as meaning simply that those railroads which do carry passengers will be bound to receive and transport passengers, and not as having a meaning contrary to the general understanding of mankind as to what constitutes a railroad.

Kansas City, S. & G. Ry. Co. v. La. W. R. Co., 116 La. 178, 40 South. 627, 5 L. R. A. (N. S.) 512, 7 Ann. Cas. 831, where a crossing was expropriated for a spur track that was to be used exclusively for freight, has already been referred to. In that case the question here at issue was not raised, but the fact itself of its not having occurred either to the court or to counsel is very significant in view of care with which the case was considered both by counsel and by the court.

[4] We conclude that plaintiff is entitled to the crossing; and we pass on to the question of damages. These are the future damages referred to hereinabove in connection with the motion to dismiss. When defendant came to offer evidence upon them, the evidence was objected to, on the ground that, such damages not being recoverable, all evidence with regard to them was irrelevant and inadmissible.

In the case of Kansas City, S. & G. Ry. Co. v. La. W. R. Co., 116 La. 178, 40 South. 627, 5 L. R. A. (N. S.) 512, 7 Ann. Cas. 831, already referred to, this court held that damages of that kind were not recoverable in a suit of this kind. We see no reason for departing from that decision. The point is not argued in defendant's brief.

Judgment affirmed.