Plaintiff, a duly chartered Louisiana corporation, organized for the purpose of engaging in the business of transportation of freight, mail and express as a common carrier in intrastate commerce, brought this suit for the expropriation of an overhead crossing over the line of the defendant, Missouri Pacific Railroad Company, an interstate trunk line railroad, and Guy A. Thompson, Trustee in reorganization proceedings of the said railroad company, pending in the United States District Court for the Eastern District of Missouri. The proposed line or road of plaintiff railway lies wholly within the Parish of Rapides between Valde Rouge and La Mourie, and in the construction of the road between these points it is essential that a crossing of the tracks and right-of-way of the Missouri Pacific Railroad Company be effected.
The procedural course of this litigation has been extremely involved, and we find it desirable to outline the pertinent facts in connection therewith. An exception of no cause, or right of action was filed on behalf of the defendant railroad, and original and supplemental exceptions to the right and capacity of plaintiff to expropriate were filed on the part of both defendants. These exceptions were overruled by the Judge of the trial Court, from which judgment defendants appealed to the Supreme Court. The appeal was dismissed on the ground that the judgment on the exceptions was not final, but was merely a preliminary or interlocutory decree, Rapides Central Railway Company v. Missouri Pacific Railroad Company et al.,207 La. 870, 22 So.2d 200.
After trial on the merits the trial Court rendered judgment, in accordance with the verdict of the jury of freeholders, granting the plaintiff the right of crossing the tracks and right-of-way of the defendant railroad company, by means of an overhead viaduct, upon payment of the sum of $800.
The Judge of the district Court refused defendants a suspensive, but granted a devolutive appeal, whereupon defendants applied to the Supreme Court for writs of mandamus ordering the granting of a suspensive appeal from the judgment of the lower Court. In answer to rule to show cause, respondents asserted the lack of jurisdiction of the appeal by the Supreme Court.
The Supreme Court declined jurisdiction and transferred the appeal, the application for writs of mandamus and the rule issued in response thereto, to this Court; Rapides Central Railway Company v. Missouri Pacific Railroad Company et al.,209 La. 26, 24 So.2d 240.
By order dated February 14, 1946, this Court made the writs of mandamus peremptory and ordered the Honorable Cleveland Dear, respondent, judge of the Ninth Judicial District Court in and for the Parish of Rapides, to grant a suspensive appeal and fix bond therefor. This action was taken for the purpose of expediting the determination of this cause, the reasons therefor being hereinafter fully set forth in this opinion.
The first issue presented is with regard to appellant's right to a suspensive appeal, in aid of which right application was made for writs of mandamus. *Page 831 
[1] No answer was made by the respondent district judge to the rule to show cause issued by the Supreme Court, and no serious ground of opposition is advanced by the plaintiff respondent. There is no doubt in our minds as to the right to a suspensive appeal on an issue involving the right andauthority of a party to subject the property of another to condemnation. It is inconceivable that any person should be deprived of rights of ownership of property, under the application of the harsh theory of eminent domain, and be denied the right to a suspensive appeal. The rights to due process in the taking of property which are reserved and assured both by our Federal Constitution, as set forth in the 5th and 14th Amendments, and the Constitution of the State of Louisiana, under the provisions of Sections 2 and 6 of Article 1 thereof, would be grossly and flagrantly violated by the application of any rule of procedure which would deny the owners of property rights the protection of a suspensive appeal.
[2] It is true that Article 2634 of the Civil Code provides that an appeal from the verdict of the jury and judgment of the lower court, by either party, shall not suspend the execution of such judgment, but unquestionably this article is intended to apply only to questions bearing upon the amount of the award and has no application to those matters which are concerned with the existence vel non, of the right to condemn. This interpretation was elaborately discussed in Orleans-Kenner Electric Railway Co. v. Metairie Ridge Nursery Co.,136 La. 968, 68 So. 93, and followed in Succession of Damico,150 La. 888, 889, 91 So. 286; Kansas City S. G. Railway Co. v. Meyer,166 La. 663, 670, 117 So. 765; Succession of Tyler,192 La. 365, 371, 188 So. 31, and other cases.
[3] We regard the right to a suspensive appeal as being plainly implied in the opinion of justice Rogers, dismissing the appeal taken from the ruling of the trial Court on the exceptions, in the course of which opinion he made the following statement: "Defendants may obtain relief, if the judgment overruling their exceptions is erroneous, by filing their answers with reservation of the exceptions and awaiting the judgment on the merits of the case. Defendants can not lose any rights in that respect by the dismissal of this appeal."207 La. 870, 22 So.2d 200, 202.
It is zealously argued by distinguished counsel for the defendants that the Supreme Court erred in dismissing the appeal from the action of the trial Court in overruling defendants' exceptions. There is no need for us to comment upon this point, but it is evident to our minds that the Supreme Court would not have refused to rule on exceptions striking at plaintiff's right to expropriate if it was not contemplated that this objection could be preserved by the defendants and later properly brought before an appellate tribunal in such manner as would avoid the possibility of inflicting irreparable damage upon the defendants.
For the reasons set forth, this Court has already entered an order making peremptory the writ of mandamus, directing the respondent judge to allow defendants a suspensive appeal and to fix the amount of bond thereof. By joint stipulation of counsel for appellants and appellees, in order to expedite a prompt determination of the issues involved in this cause, formalities and technicalities regulating the filing of bond have been waived, and, under the terms of this stipulation, we proceed with a consideration and determination of the case.
The issues involved in the instant case, with the exception of the question of the amount of the award, which is discussed last in this opinion, are comprehended by the exceptions filed on behalf of defendants, as follows:
First, the exception of no cause or right of action filed on behalf of the defendant, Missouri Pacific Railroad Company, and,
Second, the exception to the plaintiffs' qualifications, capacity, right, power and authority to exercise the power of eminent domain or expropriation for the purpose of compelling the granting of a right of crossing over the right-of-way and the track or tracks of the defendant railroad, which exception was filed on the part of both defendants. *Page 832 
The exception of no cause or right of action by the defendant railroad company is based upon the contention that under the reorganization proceedings authorized by ders Federal Bankruptcy Law and the orders and decrees issued pursuant thereto by the United States District Court for the Eastern District of Missouri, the defendant, Guy A. Thompson, Trustee, has been vested with full and complete title to, and exclusive possession of, all the property and property rights theretofore owned and possessed by the defendant railroad company, that the defendant railroad company has been divested of all its title and possession in and to the property involved in this litigation, and, as a consequence, is an unnecessary and improper party to these proceedings and is without any right or interest herein.
In support of these contentions, counsel for defendants cites the applicable sections of the Bankruptcy Act, providing for the vesting of full, complete and absolute title in the trustee, and the appropriate orders of the United States District Court carrying out these provisions.
[4] While it must be conceded that the proceedings taken and orders of the United States District Court, issued in conformity with the sections of the Bankruptcy Act relating to reorganizations, have effected the investiture of the trustee with the complete and absolute title and possession in and to all properties of the railroad company, it does not necessarily follow that the railroad company has no interest or right in these proceedings. Although the affairs of the railroad company are being administered by a trustee who holds full and complete title to all properties of the said company, there can be no question but that the company has a definite, direct, active and vital interest in the method and manner of the operations and administrations by the trustee, and a corresponding interest in the manner in which the trustee exercises and uses his title and possession of the properties.
Certainly it could not be contended, if the interests of the company and the trustee in the instant case were opposed for any reason, that the company would have no standing in court to present its position. Why then should it be claimed that because the interests are identical in the instant case, the company should not be impleaded as a party defendant?
[5] It must be remembered that the tenure of the trustee is not contemplated as being in perpetuity. The trustee holds the title and possession of property primarily for the benefit of the railroad company, and it is his responsibility, inevitably, to return the ownership, title and possession into the hands of the company after he has so improved the conditions of its operations as to have profited the company thereby. Even in the event the trustee fails in his efforts and it is necessary to make a sale or otherwise to effect a dissolution of the affairs of the company, the residuum of rights or properties or things of value must return to the company.
We do not find the citations of authority suggested in brief of defendants' counsel to be applicable. The case of Levin v. Missouri Pacific Railroad Company, La. App., 2 So.2d 99, did not involve the question of property rights, which has been raised as an issue here, but only the matter of a claim arising from negligent handling of a freight shipment. The action was brought only against the railroad company and not against the trustee, and the judgment of the Orleans Court of Appeal affirming judgment maintaining an exception of no right or cause of action was predicated squarely upon the conclusion that the trustee was a necessary party to the suit, since at the time he was operating the railroad. This has no bearing upon the point which might have been at issue had the suit been brought against both the trustee and the railroad company. Nor was this same issue raised in the other cases cited on this point.
It is noted that counsel for the defendants has argued in brief that failure to sustain this exception and dismiss the action as to the railroad company will jeopardize the constitutionality of this entire proceeding. To what extent and in just what manner the constitutionality would be so jeopardized is not set forth, and we have been unable to discover any basis for this assertion. *Page 833 
[6] Careful consideration of the issue raised on this point has not served to disclose any prejudice to the rights of the railroad company by reason of its joinder as a party defendant in this action, and we find no reason which would substantiate a conclusion of error in the overruling of the exception.
Our conclusion is further strengthened by the fact that the record in this case contains evidence of the issuance of an order in re: Missouri Pacific Railroad Company, debtor, No. 6935 in bankruptcy on the docket of the United States District Court, Eastern Division of the Eastern Judicial District of Missouri, dated June 12, 1944, and signed by the United States District judge, which order granted the petition of the Rapides Central Railway, for leave to institute expropriation proceedings against the debtor and Guy A. Thompson, Trustee, in the Ninth Judicial District Court for the Parish of Rapides, State of Louisiana. See 64 F. Supp. 64.
[7, 8] It occurs to us that any objection to the inclusion of the debtor as a party defendant in these proceedings should have been timely urged in the Federal Court having jurisdiction of the bankruptcy proceedings and by which the application of the plaintiff to bring the suit was considered. In our opinion, the debtor railroad company is bound by the order referred to, and cannot now be heard to complain of the misjoinder. Finally on this point, we note that the Bankruptcy Act itself in Section 205, sub. f, 11 U.S.C.A., makes specific provisions under which the bankruptcy court may require the debtor to join the trustee in making a conveyance of property: "* * * the judge may require the trustee or trustees, appointed hereunder, the debtor, any mortgagee, the trustee of any obligation of the debtor, and all other proper and necessary parties, to make any such transfer or conveyance, and may require the debtor to joinin any such transfer or conveyance made by the trustee ortrustees."
Certainly, if the Judge of the Court having jurisdiction of the reorganization proceedings may require the debtor to join with the trustee in a conveyance, it logically follows that there must be authority for ordering the joinder of the debtor and the trustee in proceedings which involve the taking of property and the transfer of title thereto through the operation of law in expropriation proceedings.
We now come to a consideration of the exception of both defendants by which they sought to challenge the qualifications, capacity, right, power and authority of plaintiff to exercise the power of expropriation.
Counsel argues that the sole authority, under the law of Louisiana, for the expropriation by one railroad of a crossing over another is found in Section 3 of Article 13 of the Constitution of 1921, and that this constitutional provision obligates the expropriating road to receive and transport the passengers and freight of the road whose line is sought to be crossed. On this basis, defendants challenge the ability of the expropriating railway, organized solely as an intrastate road and restricted under its charter provisions to the carrying of freight, mail and express, to adequately comply with defendants' interpretation of the constitutional requirement, in view of the fact that defendant railroad is an interstate carrier transporting passengers, mail, freight and express both intrastate and interstate, about 90% of the volume of its business being of an interstate nature. On this point defendants sought to introduce testimony which was excluded by the trial Court, of which ruling they here complain.
Section 3 of Article 13 of the Louisiana Constitution of 1921 reads as follows: "All railroads are hereby declared public highways, and every railroad company shall have the right with its road, by expropriation, to intersect, connect with, or cross any other railroad, and shall receive and transport the others' passengers, tonnage and cars, loaded or empty, without delay or discrimination."
[9] The burden of defendants' argument is directed at the point that the use of the conjunctive "and" so combines and associates the provisions set forth as to clearly indicate, through application of rules of grammatical construction, that the Constitution intends to permit the expropriation *Page 834 
of a crossing over one railroad only by other roads which shall be prepared to assume the obligations of transporting the condemnee's traffic. In other words, the contention is that the obligation to transport all traffic of the condemnee's road is the sine qua non of the right to expropriate. We do not so interpret the provision.
It is true that the word "and" is a conjunction used, as we said in the case of Vaughan v. P. J. McInerney Co., La. App.,12 So.2d 516, 519, "to connect words, phrases or full sentences * * * accepted as binding together and as relating the one to the other", but this does, not mean that the use of the word "and" of necessity must be construed as combining the expression of a right which obtains under certain conditions and an obligation which may be imposed under quite another set of facts or conditions.
To apply the interpretation suggested by defendants would necessitate the conclusion that the obligation for the transportation by one railroad of the traffic of other, roads is binding only in the event such road has procured its rights solely by expropriation. It is obvious that this is not true, yet of necessity it must be true if, as defendants contend, the rights and obligations set forth in the constitutional provision are so related and combined by the use of the conjunctive "and" as to be inseparable.
To our mind there is nothing ambiguous or involved in the interpretation of the quoted constitutional provision. The same section could as well have been written as follows: "All railroads are hereby declared public highways. Every railroad company shall have the right, with its road, by expropriation, to intersect, connect with, or cross any other railroad. Every railroad shall receive and transport the others' passengers, tonnage and cars, loaded or empty, without delay or discrimination."
The meaning of the provision as it might be written above is identical with the meaning of the section as it is actually written and worded. It is evident that the framers of the Constitution of 1921, considering the several provisions contained in the section to be related both to the rights and to the obligations of railroads in general, combined what might have been several independent statements into an euphonious, clearly expressed and unambiguous sentence.
Astute counsel for the defendants have recognized the applicability of what is known as the "Tioga decision", Vicksburg A. S. Ry. Co. v. Louisiana A. R. Co.,136 La. 691, 67 So. 553, and have devoted a large portion of their brief to criticism of the holding expressed therein and to an attack upon the conclusions reached. In furtherance of their attempt to destroy the weight of the cited case as precedent in a determination of the case before us, a forceful and persuasive argument against following the principle of stare decisis has been advanced. We have considered this argument with sincere interest, but it could only be regarded as pertinent if we disagreed with the holding in the cited case, which we do not.
Acceptance of the conclusions to which defendants' arguments inevitably lead, as a practical proposition would entail a holding which would effectively prevent the crossing of the lines of any large railway system by smaller and less important roads which have chosen to restrict themselves with regard to the type of traffic to be carried thereby. In order to qualify under defendants' theory of the right to expropriate, every railroad would have to prove its ability to carry passengers as well as freight, and, likely, going a step further would be forced to show that it had the facilities to handle a tremendous volume of both passenger and freight traffic, despite the fact that the need for such handling might never arise. We submit that such a construction would not only be strained, but would be clearly unjust, inequitable and entirely without the purview and intent of the requirements as actually laid down.
We do not deem it necessary to enter into a detailed discussion of the many ramifications of the questions here presented, which we have striven to reduce to their essential elements. By this we would not wish to be understood as slighting in any particular the extremely able arguments advanced by the learned counsel for both plaintiffs and defendants, both in oral presentation *Page 835 
and in briefs. But, to our minds, every issue involved in the instant case was disposed of, and we think correctly, in the Tioga decision. There, as here, the expropriating road was limited in the character of its service, was charged with being a corporation purely for private benefit, and the constitutional question as embodied in Article 271 of the Constitution of 1913, which was so similar as to be, for all practical purposes, identical with Section 3 of Article 13 of the Constitution of 1921, was considered.
We omit from this opinion a discussion of implied authority under acts of the legislature as well as under the general theory of expropriation, choosing to base our conclusions upon what is to us the clear authority embodied in the Constitution, the fundamental law of our State. But, we may mention, in passing, that our jurisprudence has definitely established certain general principles which are controlling in the instant case, the application of which principles would lead to the same conclusion we have reached under our interpretation of the constitutional provision. The general law, as embodied in Article 2626 of the Civil Code, was referred to in Houston S. Ry. Co. v. Kansas City S. G. Ry. Co., 109 La. 581, 33 So. 609. Again the Supreme Court held in Shreveport Traction Co. v. Kansas City S. G. Ry. Co., 119 La. 759, 44 So. 457, that no express legislative authority was required, which declaration was repeated in the Tioga decision.
[10] As far as direct authority is concerned, in our opinion the procedure prescribed by Article 2630 of the Civil Code would be more than sufficient ground, for the conclusion that any railroad is at liberty to proceed by expropriation for the condemnation of such rights as might be required.
As above noted, defendants complain of the refusal of the judge of the trial Court to admit testimony on the part of defendants purposing to prove that plaintiff road was intended exclusively to serve a private gravel enterprise, and that traffic of the defendant road was almost exclusively interstate in character, so commingled with intrastate traffic as to prevent segregation.
[11] Implicit, not only in the evident purpose for which this character of testimony was tendered, but also in the thread of defendants' arguments, is the fear that plaintiff railroad will at some later date attempt to obtain a division of through rates. However this may be, it is a contingency with which this Court can have no present concern, and, accordingly, we find no error in the ruling complained of.
The only remaining question bears upon the verdict of the jury of freeholders, which awarded the defendant railroad the sum of $800 as damages due to the expropriation and the construction incident thereto. Defendants complain of the award on the ground that it is grossly inadequate, and plaintiff, which initially tendered the sum of $50 as the fair amount of compensation, has answered the appeal and prayed for reduction of the award to the amount represented by such tender.
That portion of the district Judge's charge to the jury which deals with the element of damages reads as follows: "There is some controversy here as to the damages other than the value of the easement or right of passage. I charge you that a speculative damage or inconvenience that the Missouri-Pacific Railroad may suffer in the future does not come within the purview of damages that you might assess; also damages that are contemplated by the railroad, but not immediately connected with the taking, are improper to be assessed. It is proper for you to assess the damages actually sustained by the railroad company at the time of the taking or at the time of the construction of the overpass or damages incidental thereto. For instance, if you expropriate a man's land and he must remove his fence and suffered a damage by reason thereof, it would be, in my opinion, such damage as a jury should award. The method of operating the trains in the future or the damages the railroad company might suffer in the future because of the overpass is not a proper consideration as a basis of awarding damages. So you will consider then the value of the overpass *Page 836 
and the actual damages actually suffered by the Missouri-Pacific Railroad Company at the time of the taking of the property and the construction of the overpass. The other inconvenience it suffers must be suffered by it without compensation."
The judge refused to charge the jury, as requested by plaintiffs, that: "a railroad, whose track was to be crossed by extension of city street, was not entitled to damages for interference by proposed street crossing with exclusive enjoyment and use of track, on ground that railroad would incur damages as result of inconvenience in operation of trains and the necessity for installation of protective safety devices."
It is argued by counsel for plaintiff that the award to a defendant in expropriation is restricted by law to the market value of the property actually taken and the diminution in market value of the remaining property, which diminution was occasioned by the expropriation, and that consequential injuries resulting from disturbance of business, inconvenience, risk, and, in this case, the extra burden of operating trains, and related matters, are excluded from consideration. In a general sense, this argument is sound, but, in our opinion, it would not apply to the character of damages which are here claimed, and for which a commensurate award was made by the jury. A number of cases are cited on behalf of plaintiff in support of the contention set forth, but we do not find that the cases are applicable, since none of them comprehend facts comparable to those here under consideration.
The holdings in Kansas City S. G. Ry. Co. v. Louisiana W. R. Co., 116 La. 178, 40 So. 627, 5 L.R.A., N.S., 512, 7 Ann.Cas. 831; Vicksburg A. S. Ry. Co. v. Louisiana A. R. Co., 136 La, 691, 67 So. 553; and City of Shreveport v. Kansas City Southern Ry. Co., 193 La. 277, 190 So. 404, all discuss conditions involving damages arising from inconvenience, added burdens of operations, etc., which are contemplatedsubsequent to the construction for which the property or rights were expropriated.
The damages sought in the instant case are of a different nature in that they result from an actual increase in cost of operation to the defendant railroad by reason of the construction of the overpass crossing by plaintiff railway. No elements of future damage involving questions of the protection of the crossing, the increased burden of train operation by reason of the establishment of the crossing and related matters, were taken into consideration. The sum of $800 was fixed as the amount of damage which would be sustained by the defendant railroad "during time of construction".
[12-14] We think the charge of the district judge on this point was correct and that the verdict of the jury was responsive thereto. Precedent for the allowance of damages accruing to a condemnee during the period of actual construction is found in the holding of the Supreme Court in Green et al. v. Board of Commissioners of Lake Borgne Basin Levee District, 163 La. 117, 111 So. 619, to the effect that owners of land taken for levee purposes were entitled to be compensated for the cost of removing debris placed on the land during construction of a levee.
The only question that remains is with regard to the amount awarded by the jury. It is well established that awards made by juries of freeholders of the vicinage will be disturbed only in cases of manifest error. Careful examination of the testimony in the record on this point fails to disclose to our minds any such error as would justify us in disturbing the verdict of the jury. In our opinion the award is neither excessive nor inadequate.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost. *Page 837