65 So.2d 631 (1953)
CENTRAL LOUISIANA ELECTRIC CO., Inc.
v.
LEONARDS et al.
No. 3675.
Court of Appeal of Louisiana, First Circuit.
May 12, 1953.
Landry, Watkins, Cousin & Landry, New Iberia, for appellant.
Dugas, Bean & Bertrand, Lafayette, Abner C. Chappuis, Rayne, for appellee.
ELLIS, Judge.
The plaintiff filed suit against the following named defendants in which it sought to expropriate the following stated acres from each for the purpose of constructing, maintaining and operating an electric power line across said property, to wit:

 No. of Acres
 in 100' R/W
Louis Leonards 5.33
Annie Z. Leonards, et al 7.58
Phillip Leonards 3.70
Edgar Richard 4.03
Henry Zaunbrecher 8.87
Clephre Hulin 1.77
Dr. John P. Mauboules 2.16
Walburga T. Leonards 4.013
Charles Leonards. .707
Plattsmier-Hulin Co. .360
Willie Clements 4.12
Willie Clements 4.12
Clyde Leger et al 9.50
Clyde Leger 8.45
Clyde Leger et al 1.34

It was stipulated that the suit against Louis Leonards should be tried as a test case, the evidence to be used, together with any additional evidence, as a basis for a judgment in each of the other cases. The only additional testimony was taken in the case of Clyde Leger.
Plaintiff's right of eminent domain was recognized by all parties in each case, and the only questions presented below were the value of the rights-of-way expropriated, *632 and the consequential damage to defendants' lands resulting therefrom.
The Trial Judge, after hearing the evidence, gave written reasons in which he discussed in detail all the testimony and rendered a judgment fixing the value of the right-of-way in the test case at $160 per acre for the 5.33 acres expropriated, and also granted to the defendant the sum of $110 for compensatory damages.
The plaintiff has appealed in each of the cases, and each defendant has answered the appeal asking for an increase so that the amount awarded to each for the rights-of-way and easements and damages would be the equivalent of $250 per acre. The amount awarded by the lower court for the rights-of-way and damages was approximately $180 per acre.
It is the plaintiff's contention on appeal that no damages were proven and none should have been awarded, and that the value of the rights-of-way should have been "$50.00 per pole plus $1.00 per rod, or $100.00 per acre."
There is no dispute as to the law and settled jurisprudence applicable to this class of case. It is agreed that our laws and Constitution assure that private property shall not be taken or damaged without the payment of just and adequate compensation, which may be divided into two possible elements, viz., the value of the easement or property right taken, and the damage sustained by the landowner to his remaining lands which is shown to have been caused by the taking. The question of compensation for the land or property rights taken is separate and distinct from the question of damages to the remaining property and the evidence must be construed so as not to blend one with the other. Shreveport & R. R. Valley Railway Co. v. Hinds, 50 La.Ann. 781, 24 So. 287.
On the question of damages as distinguished from the value of the land or property rights taken, it is well settled that they are the difference between the market value of the property immediately before and immediately after the expropriation, and that mere consequential injury to the owner arising from discomfort, disturbance, injury to business, and the like are damnum absque injuria. Harrison v. La. Highway Comm., 191 La. 839, 186 So. 354; American Tel. & Tel. Co. v. Maguire, 219 La. 740, 54 So.2d 4; Louisiana Highway Comm. v. Boudreaux, 19 La.App. 98, 139 So. 521; Vicksburg A. & S. Ry. Co. v. La. A. & R. Co., 136 La. 691, 67 So. 553; Commercial Telegraph Cable Co. of La. v. Prevost, 133 La. 47, 62 So. 347.
It is also well-settled jurisprudence that damages to lands cannot be presumed in expropriation proceedings, and compensation is limited to the value of the land taken unless the owner shows by competent evidence that the taking diminished the value of his remaining land. Louisiana Highway Comm. v. Ferguson, 176 La. 642, 146 So. 319. In this connection, the burden of proving damages is on the defendant, and such damages must be proved with a legal certainty. Louisiana Highway Comm. v. Boudreaux, cited supra; Murff v. Louisiana Highway Comm., La.App., 146 So. 328, 331.
The two elements of compensation stated, supra, will be considered in their order.
The District Court very thoroughly and in detail considered the testimony of each witness as to the value of the defendants' property and arrived at the definite conclusion that the preponderance of the evidence supported a finding that it was worth $300 per acre. We see no useful purpose in rehashing the testimony of each witness on this point, for the findings of the district court are amply supported by the evidence. The lands sought to be expropriated in these suits are rich rice lands. There is practically no difference in the lands of the various defendants except that the defendant in this test case is shown to grow certified rice seed, which means that his land is particularly free of any obnoxious weeds.
The plaintiff admits that even at first blush, should it seem that the market value of the defendants' farms will be unaffected by the taking of the easement or right to construct a transmission line over them, the fact remains that the plaintiff is taking something belonging to each of the defendants and for this the defendants must be *633 compensated. The plaintiff's main complaint on the question of compensation awarded by the District Court for the easements or property rights taken is stated in his brief as follows:
"The District Court chose to make its award on an acreage basis, and for this purpose took the figure of the computed acreage within the full 100 foot strip. The Court then turned to the testimony of one of plaintiff's witnesses, which was to the effect that he considered $100.00 per acre ample payment for the rights taken. And since the same witness had valued the land at $200.00 per acre, the Court concluded that this established the value of the right-of-way at ½ of the value of the land. Next, the Court concluded that the land was valued at $300.00 per acre, taking the highest value placed upon the property by defendants' witnesses and completely ignoring the value placed thereon by plaintiff's three witnesses. Finally and without explanation the Court awarded $160.00 per acre for the right-of-way.
"In this connection, it is submitted that the District Court erred in two respects: First, in taking the highest value placed upon the property by defendants' witnesses, and more important, in concluding the value of the right taken to be ½ of the market value of the property itself. With reference to the value of these properties, it may be safely assumed that they are all in the same category, and all have the same value."
It is true that the District Court accepted the highest value placed upon the property by the witnesses, however, the testimony amply supports this finding. It is also true that the Court in its written reasons did refer to the testimony of a witness for the plaintiff who valued the land at $200 per acre, and who on this basis fixed the value of the property taken at "approximately half" or $100 per acre. In addition to the testimony of one of the plaintiff's witnesses, which the District Court referred to in its written reasons and is shown by quotation from plaintiff's brief, another expert real estate dealer who testified on behalf of the plaintiff fixed the value of the defendants' lands at $200 per acre, and that of the actual right-of-way at $100 per acre. In addition to this testimony, the plaintiff placed upon the stand its right-of-way superintendent who had negotiated for the acquisition of the rights-of-way for this transmission line, not only across the property of these defendants but other owners affected thereby, and it was his testimony that while he believed $100 per acre was ample compensation for the right-of-way to be expropriated, he also stated that he had paid others $150 per acre for a similar right-of-way. His explanation was that this amount had been paid "in order to keep out of the lawsuit." He also testified that he had offered these defendants $150 per acre for the same reason but that they refused to accept anything less than $200 per acre.
The District Court awarded $160 per acre. In view of the fact that the testimony preponderately shows a value of $150 per acre and also that the District Court went upon the lands and personally inspected them, and considering the entire testimony, we cannot say that he committed manifest error in awarding $160 per acre.
As to the question of damages presented, it is the contention of the defendants that as they plant and fertilize their rice by airplane the poles and wires to be located on the rights-of-way would seriously interfere with this operation. It is shown that the structures to be located on the rights-of-way on the defendants' lands are to consist of two poles 65 feet high, 14 feet apart, with a 29-foot cross arm, and the poles are located approximately some 600 feet apart, and from these cross arms will be suspended five wires which at the pole will be 55 feet above the ground and at their lowest overhang approximately 26 feet. The reasons for the damages awarded of $110 to the remaining portion of the defendants' lands were based upon the following statement made by the District Judge in his reasons for judgment and we quote:
"The item which concerns the damage to the remaining portion of the defendant's land now addresses itself to the Court. It is shown that the use of planes for planting and fertilizing rice on defendants' *634 land will be affected due to the fact that twice as much time will be required to perform the same operation after the line is constructed and additional cost will be involved in this operation. The testimony in the record is to the effect that a plane would have to begin its ascent one-eighth of a mile before reaching the powerline in order to clear it as is required under ordinary safe flying practices and that it would not resume the proper altitude for planting and fertilizing until it had traversed another eighth of a mile after clearing the line. In other words, a quarter of a mile of defendant's land around the center of the right of way land would be affected in the rice planting and fertilizing operations. The necessity of having to fly above the standard altitude would result in spotty seeding and inefficient fertilization and would undoubtedly affect to some extent the yield of the lands within that area. Taking this into consideration and the other factors of inconvenience which the Court feels would affect the market value of the remaining portions of defendant's land. The Court is of the opinion that damages in the sum of $110.00 would be fair and adequate under the circumstances."
However, accepting the facts as found by the lower court, there is no testimony upon which to base an accurate or approximate value of damage to the adjoining lands. It is the clear testimony of all the flying experts who testified that the companies engaged in the planting and fertilizing of rice by plane charged not for the time consumed in the operation but by the pound of seed or fertilizer distributed. There is no testimony that even though it might take longer to plant these lands as the result of the power lines across them there would be any extra charge. The record is totally bare of any testimony fixing a definite or approximate added cost of planting or fertilizing the defendants' land by airplane as a result of the plaintiff's lines and structures. These pilots who actually serviced farms that were affected by high-powered lines did not testify that there were any additional charges made to the farmers by their companies.
There are pictures in evidence of a rice field with similar power lines as proposed in these cases crossing it, and the rice around the poles and under the wires appears uniform with that in the open fields unaffected by the poles and wires. However, these fields were planted by ground machines and not planes. In fact, it is shown that some farmers prefer the latter method. A comparison of the cost of the two methods of planting and fertilizing, that is, by ground machine and airplane, is not shown by the testimony, and even should we accept the testimony that with the wires and poles across defendants' lands the plane method would not be satisfactory and they would have to resort to the ground machine method, there is no testimony to show a comparison of the costs of the two methods.
We are, therefore, of the opinion that the defendants have failed to prove to a legal certainty the amount of damages, if any, to their remaining property and that the judgment of the District Court should be amended in this respect, and as thus amended is affirmed, the plaintiff to pay all costs of the trial in the District Court and the defendants to pay the costs of the appeals.