184 So.2d 326 (1966)
GULF STATES UTILITIES COMPANY, Plaintiff-Appellant,
v.
Edna HATCHER et al., Defendants-Appellees.
No. 6574.
Court of Appeal of Louisiana, First Circuit.
February 28, 1966.
Rehearing Denied April 4, 1966.
*327 F. W. Middleton, Jr., of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellant.
R. H. Kilbourne, Clinton, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
ELLIS, Judge.
On January 22, 1965, Gulf States Utilities Company filed a petition for expropriation against the defendants Edna T. Hatcher and Zach E. Hatcher, as the usufructuary and owner of a certain tract of land in East Feliciana Parish containing some 516.82 acres. Plaintiff seeks to expropriate as servitude 170 feet in width and extending a distance of 4276 feet across defendants' land for the purpose of construing a high voltage electric transmission line to be supported by steel towers ninety to one hundred twelve feet in height rising from forty foot bases and spaced approximately twelve hundred feet apart. There is no dispute as to the necessity for the improvement or the right of plaintiff to utilize the expropriation procedure, the only dispute being as to the value of the servitude and the amount of severance damages, if any.
Defendants' land is located on both sides of State Highway 10 known as the Clinton-Greensburg Highway about eight miles east of Clinton. The highway runs through the approximate center of the Hatcher *328 property in an east-west direction. The Hatcher residence is located on the south side of the highway on a hill and has a view of a lake or pond about five acres in size. The proposed right-of-way runs in a north-south direction across the eastern edge of the pond and severs the east five acres of the property south of the highway from the homesite. The servitude would also sever about twenty-six acres off the west side of the land north of the highway. Both expert appraisers for the plaintiff testified that this was probably the prettiest piece of rural residential property in the entire parish of East Feliciana and that the servitude was located in the prettiest part of that property. For severance damages, defendant relies on a decreased desirability for residential development but primarily on injury to the aesthetic values. That this is important to defendants is evidenced by the fact that they offered plaintiff a free right-of-way over another portion of their property, which offer was refused because of the added expense of relocating the line.
The plaintiff alleges that $5,925.00 for the purchase of the servitude is a fair price. In support of that contention plaintiff has offered the expert testimony of two appraisers, Lewis C. Peters and John LeJeune. Both appraisers arrived at a reasonably similar conclusion as to the value of the servitude, using approximately the same comparable sales, but it is impossible to reconcile their reasoning and conclusions as the per acre values were found by the experts to be $150 and $450 respectively. In addition, Mr. Peters believed there were severance damages whereas Mr. LeJeune did not.
Mr. Peters divided the 16.43 acres actually contained in the servitude into four types of land according to the best use made or to be made of each. 4.97 acres of this he classified as residential property,.86 acres as pond, 9.31 acres as improved pasture, and 1.31 as forest land. The residential property he valued at $500 per acre; the pond at $1000 per acre; the improved pasture at $180 per acre, and the forest land at $100 per acre. This works out to $317.55 per acre for the land actually in the servitude or a value of $5230.10 for the servitude. $76.30 was added to compensate for the actual value of the timber to be felled within the servitude. Severance damages to the agricultural uses of the remaining property were disallowed by Mr. Peters because the servitude would not affect the pasturing of herds or the raising of crops and would not impair movement from one side of the servitude to the other. Mr. Peters also testified that he did not see any damage to the residential property and, hence, allowed no severance damages to that area. However, when asked about the pond, he said:
"A. Well, the pond is quite pretty. It's a nice pond. It has got aesthetic value as well as utility as far as the pastures are concerned. And my feeling was that hanging a high line over the pond would damage it to this extent."
Mr. Peters also testified, however:
"Q. Did you consider the passage of the servitude over the pond as damaging any other portion of the pond other than that portion within the right-of-way itself?
"A. No, sir, I didn't consider it.
"Q. And it is your opinion that other than the area included in the servitude itself there is no damages to any portion of the defendant's property?
"A. That'sthat's my opinion sir."
From this testimony it is clear that while Mr. Peters agreed that the aesthetic values of the pond and surrounding property would be damaged by the transmission line, he was unwilling to allow any damages for any part of the property other than that contained within the area of the servitude. *329 Thus, his estimates do not contain any amount representing severance damages but rather represent an inflated value of the servitude.
Mr. Peters defends this with the following testimony
"Now, I might say that I purposely made it somewhat higher than what I considered to be average fair market value in the area to compensate for damages in an effort to affect a settlement."
Mr. LeJeune found that the market value per acre of the Hatcher property was $450.00. He arbitrarily, and we think generously, assigned 80% of this to the servitude and 20% to the interests remaining to the defendants. This produces a rounded off value of $5,925.00 for the servitude itself. Mr. LeJeune could see no basis for awarding severance damages. He testified:
"A. Well, it isas I said, it's my opinion that the value of the portions sought is $5,925.00that's all inclusive. And I did not include any amount for damages, because I don't think the remainder property is damaged."
Obviously Mr. LeJeune and Mr. Peters disagree as to the existence of severance damages as well as to the actual per acre price of the land. Mr. LeJeune failed to take into account that the servitude will traverse the portion of defendants' land considered most valuable and, therefore, his calculations are based on an average per acre price of the entire tract rather than on the value of the particular acres included within the servitude.
Other than the testimony of the defendants themselves that they did not enjoy the prospect of a high voltage line marring the beauty of their property, the only evidence produced by defendants as to value was the testimony of Mr. Toler McCutcheon that he had sold two acres to the Union Baptist Church for $2000.00. This property was considerably north of the subject property and unimproved but fronted on a hard surfaced road. Considering the rule of law that fair market value in an expropriation proceeding is to be determined by the price acceptable to both a willing seller and a willing buyer, the following testimony of Mr. McCutcheon is illuminating:
"Q. How did you arrive at the value you charged them for the property?
"A. A fellow came to my house and said he would like to buy the area for the church, and asked me would I consider selling it. I said I would for $1000.00 per acre. He said, `yes, sir.'
* * * * * *
"A. I appraised it myself.
"Q. On the basis of what?
"A. On what I wanted for it."
The McCutcheon sale, however, is not strictly comparable because of the size of the tracts involved and because the law assumes that the willing seller and willing purchaser who establish real estate values are informed persons. An isolated sale for a price seriously out of line with other comparable sales in the area must be viewed as having little value in fixing values and must be given little weight.
The trial court gave judgment for $18,993.50 and costs. This figure is the sum of four separate awards covering the following portions of the Hatcher property: (1) The five acre strip south of the highway and east of the servitude and homesite. (2) The 187 acres remaining in the homesite. (3) The 26 acres north of the highway and (4) the value of the servitude itself.
Relying on Tennessee Gas Transmission Co. v. Primeaux, La.App., 100 So.2d 917, *330 and Central Louisiana Electric Co. v. Mire, La.App., 140 So.2d 467, the trial judge found a damage of 25% for the five acre strip and a damage of 10% for the 187 acre homesite and the 26 acres north of the road. The court accepted $450.00 per acre as fair market value and used that figure to compute severance damages for the three parcels. In computing the value of the servitude the court awarded the full fair market value of the property for the full 16.41 acres, or a total of $7,393.50.
With this result as to the value of the servitude we cannot agree. Mr. Peters reasoned that there was no damage to the agricultural land and pond within the servitude because it could still be used for grazing or growing crops. Nor were any mineral rights taken. This appears reasonable and therefore a factor of 40% of the fair market value of the land applied to this portion of the servitude appears generous, if somewhat arbitrary. It is only half of what plaintiff's own witness suggested, however. The portion of the servitude now occupied by timber would be completely taken in a sense, as the plaintiff would not allow trees to grow under the lines. It would, however, be available for pasture land. Likewise, the residential portion of the servitude is no longer well suited to that use but could be used for agricultural purposes. A factor of 80% applied to these areas appears reasonable.
Therefore, the value of the servitude should be calculated at 40% of the fair market value of the pasture and pond and 80% of the fair market value of the timber lands and residential areas.
What then is the fair market value of those respective areas? Mr. Peters found the 4.97 acres of residential property to be worth $500.00 per acre, the 9.31 acres of pasture to be worth $180.00 per acre, the 1.33 acres of forest land to be worth $100.00 per acre, and the .86 acre pond to be worth $1000.00 per acre. In view of the lack of any conflicting evidence whatsoever as to the value of pasture, pond and forest lands, we are forced to accept Mr. Peters' estimates. As to the residential property we believe it to be more valuable than $500.00 per acre. We arrive at this conclusion after considering the McCutcheon sale and the testimony of Mr. LeJeune that the average per acre price was $450.00 for the entire 516.82 acres. A value of $1000.00 for the residential property appears warranted.
The value of the servitude is, therefore, $6054.32.[1]
Turning now to a consideration of severance damages, defendants offered no evidence as to the amount of such damages that would be proper in this case. We believe that the cases relied on by the trial court do support an award of severance damages based on a fixed percentage of the value of the remaining lands. There is, however, no evidence, convincing or otherwise, on which to base such an award in this case and, therefore, those cases are inapplicable.
The cases are legion that in instances that where less than the whole of the property is taken severance damages are the difference between the market value of the property immediately before the taking and immediately thereafter. See, for example, State, Department of Highways v. Dodge, La.App., 168 So.2d 430.
It is also settled beyond the possibility of any doubt that the burden of establishing severance damages rests upon the owner. See Central Louisiana Electric Co. v. Covington & St. Tammany Land *331 & Improvement Co., La.App., 131 So.2d 369, and cases therein cited.
Moreover, the following statement appearing in the Covington & St. Tammany Land Co. case is applicable to this present matter:
"However, severance damages cannot be presumed and unless the owner of the remaining property shows by competent evidence that the value of his remaining land has been diminished by the taking, compensation will be limited to the value of the land actually taken. 10 R.C.L., Eminent Domain, Page 135, Par. 154; Louisiana Highway Commission v. Ferguson, 176 La. 642, 146 So. 319; Central Louisiana Electric Co., Inc. v. Leonards et al., La.App., 65 So.2d 631.
"The burden of proving severance damages rests upon the landowner as evidenced by the following appearing in Central Louisiana Electric Co., Inc. v. Leonards et al., La.App., 65 So.2d 631, 632:
"`On the question of damages as distinguished from the value of the land or property rights taken, it is well settled that they are the difference between the market value of the property immediately before and immediately after the expropriation, and that mere consequential injury to the owner arising from discomfort, disturbance, injury to business, and the like are damnum absque injuria. Harrison v. La. Highway Comm., 191 La. 839, 186 So. 354; American Tel. & Tel. Co. v. Maguire, 219 La. 740, 54 So.(2d) 4; Louisiana Highway Comm. v. Boudreaux, 19 La.App. 98, 139 So. 521; Vicksburg A. & S. Ry. Co. v. La. A. & R. Co., 136 La. 691, 67 So. 553; Commercial Telegraph Cable Co. of La. v. Prevost, 133 La. 47, 62 So. 347.
`"It is also well-settled jurisprudence that damages to lands cannot be presumed in expropriation proceedings, and compensation is limited to the value of the land taken unless the owner shows by competent evidence that the taking diminished the value of his remaining land. Louisiana Highway Comm. v. Ferguson, 176 La. 642, 146 So. 319. In this connection, the burden of proving damages is on the defendant, and such damages must be proved with a legal certainty. Louisiana Highway Comm. v. Boudreaux, cited supra; Murff v. Louisiana Highway Comm., La.App., 146 So. 328, 331.'
"Proof of severance damages must be certain and positive as distinguished from uncertain, indefinite, speculative, remote or conjectural." (131 So.2d 369, 379-380)
In the present case the defendant really offered no expert at all because defendant's sole witness, Toler McCutcheon, was a layman with no experience as a realtor and who had merely sold two acres of his own property. He did not testify as to severance damages and his testimony along that line would have been entitled to virtually no weight or consideration whatsoever.
In expropriation proceedings the courts will examine the qualifications of the experts and in consequence thereof will accord greater weight to the testimony of some depending, of course, upon the circumstances and qualifications. Department of Highways v. McNeely, La.App., 130 So.2d 136.
For the above reasons it is hereby ordered that the judgment below be amended by reducing same to the sum of $6054.32 and otherwise affirmed.
Amended and affirmed.
NOTES
[1] of 9.31 acres of pasture at $180.00 per acre = $ 670.32
40% of .83 acres of pond at $100.00 per acre = 344.00
80% of 1.33 acres of forest at $100.00 per acre = 1064.00
80% of 4.97 acres of residential at $1000.00 per acre = 3976.00