(33 South. 609.)

No. 14,312.

HOUSTON & S. RY. CO. v. KANSAS CITY, S. & G. RY. CO.

(Feb. 2, 1903.)

RAILROADS—CROSSINGS—INTERLOCKING DEVICES—APPEAL.

1. A reasonable and practicable crossing will not be denied if it be in the interest of the public that it be granted.

2. Although there is no statute regulating the expropriation of a crossing of one railroad by another, the general statute upon the subject will afford the right to obtain crossing when the business of the road and of the public are in need of a new depot.

3. Rights of way are acquired subordinate to the public's right to other roads. The test is necessity and public interest. The right of the road at the place selected will not be more materially impaired than it would be if another place for the crossing be selected.

4. Safeguards and protection at crossings are highly important. They should be general, and not limited to one crossing. The right to require interlocking devices and other safety appliances is left open for consideration in proceedings, if instituted to that end.

5. The jury of the vicinage are peculiarly competent to judge of the necessity of allowing one railroad to cross the line of another at a particular place, and to assess the amount to be paid therefor. Unless their finding is manifestly erroneous, it will not be disturbed.

(Syllabus by the Court.)

Appeal from judicial district court, parish of Caddo; Alfred Dillingham Land, Judge.

Action by the Houston & Shreveport Railway Company against the Kansas City, Shreveport & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Alexander & Wilkinson, for appellant. William Henry Wise and Edward Beverly Herndon, for appellee.

BREAUX, J. Plaintiff sued for a judgment expropriating a crossing for its road over defendant's road.

Its new depot and platform are on Southern avenue in the city of Shreveport.

They were built because thought more convenient to the public, and needed by the increasing transportation business of plaintiff. The old depot building was not adequate to the business. Its location was inconvenient. The necessity for change and improvement in depot accommodation is sustained by the testimony.

In order to reach this new depot it is necessary to cross the two legs or prongs of defendant's wye in that city. Defendant bought its right of way at this particular place from plaintiff.

In the deed plaintiff had reserved the right (with two tracks) to cross the property it sold to defendant at points near, but not at, the same place as that now claimed by plaintiff.

In its petition plaintiff relinquishes its right reserved as just stated, provided it succeeds, for a reasonable price, in securing the crossing now sued for.

Plaintiff avers that the damage and inconvenience to the defendant company would not be greater in case its petition is granted than it would be at the crossing it (plaintiff) reserved as before stated; that it (plaintiff) offered to exchange these rights, but that the defendant refused.

As well state now that defendant seeks to meet this contention of plaintiff for another crossing than that reserved by averring that it is true it (plaintiff) has reserved a right to cross its (defendant's) track, as before stated, but that this crossing (reserved by plaintiff) would be over the main track more practicable, and not over the defendant's wye.

Defendant also urges in this connection that, if plaintiff has reserved a right to a crossing at a place that would be dangerous, the relinquishment of this right should not be considered, when plaintiff asks for a crossing at least equally as dangerous at another place; that the wye is the only convenient

way the defendant company has of coming into the city. The testimony shows that the crossing sought by plaintiff is over an ordinary construction of defendant's road, and the crossing will be an ordinary crossing similar to others in that part of the country—double guard rails, bolted with plates.

In fine, defendant stands on the price it has paid for its right of way and for an uncrossed wye. The necessity to change the grade enters into the issues of the case. Also the use of safety appliances said to be now used by railroads at crossings, the use of interlocking switches or gates, and the employment of a watchman. The defendant particularly urged in the district court that, if the crossing was allowed, some protection should be required by the jury, either by using interlocking switches, watchman, or gates, and asked the judge to instruct the jury that it was competent for them, if they found for plaintiff, to impose the requirement of defendant to use safety appliances, such as experience and "common use have demonstrated to be necessary to the safety of the traveling public or the employés on the trains while making the crossing." (We copy from the instructions requested, and which were submitted to the district judge.)

The charges were refused, and defendant excepted. The court, on the contrary, instructed the jury that it had nothing to do with any question as to how the crossing should be made, or the appliances used; that its duty was to find whether there was necessity for the expropriation, and, in that case, the damages to be awarded.

The jury returned for the right of way, and allowed $200 damages for the strip of land. Other facts will be considered in discussing the issues of the case. From this judgment the defendant appeals.

We are led to infer from the testimony that the crossing is needed in public interest; that the new depot will offer greater facility and some economy to consignees of property in matter of transportation to the city of Shreveport, and better accommodation to passengers.

The general manager of plaintiff's road testified that the new crossing would not increase or decrease its revenues; that the new depot will be a convenience to the public, and the charges will be less. It therefore follows that the case presents a question in which the public is interested. It is from that point of view that we have considered the issues, and from these premises we think that plaintiff is entitled to a judgment of expropriation, even if the following article of the Constitution (article 271) only gives an unavailing right because it does not point out how it shall be enforced, and although in this state there is no statute referring particularly to the right of one road to cross another.

But "the general law contains provisions for expropriation whenever it becomes necessary for the public use." Civ. Code art. 2626.

The freight received at the old depot is handled with greater difficulty than it will be at the new depot, and there are no passenger facilities at the old depot. From the point of view of the public interest to which we have referred, it is evident, to our best thinking, that the application for the crossing falls within the terms of the general law of expropriation of the state.

"This right is based on public interest and necessity. The rights of the public are superior to the interest of any particular company, and the public have the right to demand the construction of railroads across the lines of other railroad companies." Elliott on Railroads, vol. 3, p. 1116.

The work of Lewis on Eminent Domain contains rules upon the subject of expropriation in the absence of statutory regulation. Vol. 1, § 268.

"Convenience and economy are looked to in deciding whether or not the right to cross will be adjudged." In re St. Paul R. Co. (Minn.) 33 N. W. 701.

The issues as made up and presented do not lead to the inference that the objection under discussion is defendant's principal ground of defense.

A civil engineer of defendant's road, on his cross-examination as a witness, when asked if the objection was that defendant did not want plaintiff to cross at all, and if there was not intention to throw obstacles in the way, and let everybody stay as they are, said, "No"; that the object was to maintain the facilities they had, and not let them be depreciated; and added: "No, sir; I am not

a Chinaman"—dispelling by his utterance all thoughts of impassable walls of the Chinaman's country.

It was commendable enough on the part of defendant's company to oppose all crossing threatening to impair defendant's service at the particular point.

In our view of defendant's insistence in this regard, we have carefully examined into the facts on this issue. There is conflict in the testimony. Its weight satisfies us that the inconvenience would not be much less at any other place. The decisions upon the subject do not compare inconveniences with great minuteness, and hold that the slightest preponderance in that regard should be held as determinative after a selection has been made.

We quote from one of the decisions upon this point:

"That railroad crossings are inconveniences, particularly where they are on grade, and frequent, is indisputable. But the law in regarding railroads as public necessities, has not extended its generous privileges to them altogether, without some possible attending inconveniences. Among the latter are lawful crossings, intersections, and connections of a rival company without legally competing for transportation of freight.

"The matter when left to the court presents a question of fact." Elliott on Railroads, vol. 3, § 1120.

Viewed in that light, the testimony would not, in our view, justify a change to another point.

"The location of a crossing is sustained as prima facie correct, and, in the absence of all evidence to the contrary, will be considered a just measure of what is essential." Dietrichs v. L. & N. W. R. Co. (Neb.) 13 N. W. 624.

It must not be overlooked (although litigants are not always careful to remain within bounds of their rights) that plaintiff is itself interested in securing a safe crossing. If another point were selected, the same stoppage (of defendant's tracks) would be necessary at the crossing. There is conflict of testimony regarding the grade. It would be less at other places, but not to an extent to justify us in changing the present location. But defendant's further contention is that there would be less injury done if plaintiff located its line in a more direct course, and did not follow the curve it has.

This plaintiff meets by showing that depots are usually approached by the train at a tangent, as in this instance, and that it would be inconvenient to approach a depot in a direct line; to illustrate: perpendicular to the depot, or at any other angle. This has the appearance of being reasonable, and is not outweighed by the contention that the crossing should be selected at some point above or below the wye.

But defendant avers that, on account of the frequent trains crossing at the point in question, public travel should be protected by what is known among railroadmen as an "interlocking switch"; a gate; with such other safety appliances as may be necessary in order to minimize the danger.

From the brief we excerpt the following:

"It may be that the jury have no right under the law to pass on this question of how the crossing shall be protected, or say what means, even those in common use, should be adopted by the crossing road to prevent collisions or accidents; but the exercise of the right should be protected somewhere or somehow."

We agree with learned counsel. There is, or there should be, authority to that end in the railroad commission, or in the court, or perhaps in both, and for that reason we will reserve whatever right defendant may have to performance in this respect.

Plaintiff suggests (and there is testimony upon that subject) that the defendant is attempting to obtain in asking for these safety appliances that which it has failed to do for its own crossings. No one will deny that every reasonable precaution should be taken to protect life, avoid loss, prevent accidents, not only at one, but at all, crossings, to the extent necessary. These matters can be considered in connection with rights reserved when defendants will claim them judicially.

This brings us to the question of damages. In expropriation cases this court has always held that the amount of damages is peculiarly within the province of a jury of freeholders.

There is no middle ground. It must be found by the jury, or the large amount asked by defendant must be allowed. Between the two, we have arrived at the conclusion

to let the verdict remain as found by the jury.

For reasons assigned, the verdict and judgment are affirmed. To the defendant is reserved the right as mentioned in the body of our opinion.

Plaintiff and appellee to pay costs of appeal.