116 — 178
120    986

(40 South. 627.)

No. 15,945.

KANSAS CITY, S. & G. RY. CO. v. LOUISIANA W. R. CO.

(Feb. 26, 1905.)

1. RAILROADS — CONNECTIONS AND CROSSINGS —SPUR TRACKS.

The constitutional right of a railroad company to intersect, connect with, or cross any other railroad is not confined to main tracks, but extends to spur and other tracks forming a part of the same system.

2. SAME—PUBLIC HIGHWAYS.

All railroads are declared by the Constitution to be public highways and all railroad companies to be common carriers. This declaration applies, not only to main tracks, but also to all subsidiary tracks used for the purposes of railroad traffic.

3. EMINENT DOMAIN—PUBLIC USE—CROSSING OTHER ROADS.

Where a proposed spur track is intended for the transfer of freight in car load lots to and from a number of industrial plants in a town or city, its use is open to the public, and the railroad company constructing such a track has the right to expropriate necessary crossings over the spur tracks of another railroad company. Act No. 74, p. 103, of 1902.

4. SAME—LOCATION—NUMBER.

The location and number of such crossings and their necessity involve questions of fact properly submitted to the jury of freeholders.

5. SAME—COMPENSATION—ELEMENTS OF DAMAGE.

Where the plaintiff company takes nothing but the easement of crossing, the compensation should be based on the depreciation in value of the property resulting from the joint · use of the tracks. The value of the portion actually used, and the consequent depreciation, if any, of the value of the remainder for railroad purpose, should be considered; but mere interruption or inconvenience in the transaction of business, increased liability to accidents, and the

stopping or flagging of trains at crossings, if required by statute or ordinances, do not constitute elements of damage.

6. SAME—AWARD—APPEAL.

In case of railroad crossings, where nothing is actually taken but the joint use of small portions of spur tracks, and the injury to the remainder for railroad purposes is doubtful and uncertain, the award of a jury of freeholders of the vicinage, who have inspected the proposed crossings and who are familiar with all the surroundings, will not be disturbed as to amount.

7. APPEAL—AMENDMENT OF JUDGMENT.

Where it was stated to the jury by the officials of plaintiff company that it would be compelled to construct and maintain the crossings sued for at its own expense, and such statement is reiterated by counsel in the Supreme Court, the verdict and judgment will be amended so as to enforce such understanding.

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Action by the Kansas City, Shreveport & Gulf Railway against the Louisiana Western Railroad Company. Judgment for plaintiff, and defendant appeals. Amended and affirmed.

Williams & Williams, for appellant. McCoy & Moss and Alexander & Wilkinson, for appellee.

LAND, J. Plaintiff company instituted this suit for the purpose of expropriating several crossings over the tracks of the defendant company as per map attached to the petition. The petition alleges that the crossings sued for are necessary to enable plaintiff company to properly conduct its business as a common carrier "and for the interest of the public and in order that it may reach various places of business" in the city of Lake Charles.

Defendant excepted that the petition sets forth no legal cause of action and no right of action against the defendant. This exception was overruled, and the defendant answered, first pleading the general issue, and then contesting the plaintiff's right to expropriate the said crossings, on the grounds that the purpose was to secure a right of way for the construction and operation of spur tracks to reach private industries; that by reason of the location and number of the crossings sought defendant would be deprived to a great extent of the beneficial use and enjoyment of their own spur tracks; and that plaintiff has no legal right to expropriate property devoted, as defendant avers its said tracks to be, to a public use for the purpose of a similar and no more important use.

In case of the overruling of the foregoing defenses, the answer further avers that the crossings sued for are unreasonable and unnecessary in number, thereby increasing the danger and expense of operating defendant's tracks, and that defendant is entitled to the judgment of the court prescribing the location and character of any crossings so as to minimize the danger and inconvenience to defendant. The answer, however, does not suggest the number or location of the tracks that may be necessary for the purposes contemplated by the plaintiff. In conclusion, defendant prays for judgment for $88,000 for the value of the property sought to be taken, and for loss, inconvenience, and damage that may be reasonably expected to result from the construction and use of the crossings claimed by plaintiff, including the increased cost of operating its tracks, their impaired value and the cost of half the expense of maintenance. Wherefore defendant prayed that plaintiff's suit be dismissed, and in the alternative for judgment for $88,000.

The case was tried before a jury of freeholders, which found a verdict in favor of plaintiff for a right of way, excluding the fee, over defendant's rights of way, as prayed for in the petition and as indicated on the map annexed thereto, and fixing the value of said easement at $855. From a judgment pursuant to the verdict, defendant has appealed.

The exception of no cause or right of action necessarily admits as true all of the allegations of fact contained in the petition. The petition shows that the crossings sued for are necessary to enable plaintiff to properly conduct its business as a common carrier and for the interest of the public. In connection with the map attached, the allegations of the petition show that plaintiff company intends to construct a long spur track, extending from its main line more than a mile in length to sawmills and other industrial plants located on the Calcasieu river. The ground of defendant's demurrer seems to be that the purposes disclosed by the petition are private, and not public, and therefore plaintiff has no legal right to expropriate the right of way in question. The cases cited by plaintiff seem to have been decided on the theory that a spur track, intended for the exclusive use of an individual or a collection of individuals, less than the public, is a private enterprise. In the case at bar the allegations of the petition, with the map annexed, disclose no such limited purpose. It is distinctly alleged that the right of way sought to be appropriated is "for the interest of the public" and to enable the plaintiff to properly conduct its business as a common carrier. The same exception is pleaded in the answer and can be more satisfactorily considered in the light of the evidence adduced on the trial relative to the purposes of the proposed track construction.

If, as averred in the answer, the spur tracks of defendant are devoted to public use, plaintiff's proposed spur tracks intended for similar purposes will be likewise devoted to public use.

The evidence shows that switch and spur tracks are essential to every railroad company for the handling of freight in car load lots, and that such freight ordinarily constitutes nine-tenths of railroad traffic. The evidence further shows that plaintiff's spur tracks will accommodate a number of plants located on the river front, constituting from 60 to 80 per cent. of the industries of the city of Lake Charles, and will be open to all other business enterprises, present and future in the same vicinity.

Article 284 of the Constitution of 1898 empowered the railway commission "to require all railroads to build and maintain suitable depots, switches and appurtenances."

In 1900 the commission adopted an order providing that "no switches or spurs now in use in this state shall be removed or abandoned" without its consent. The Kansas City Southern Railway Company was fined $1,000 by the commission for removing a spur 190 feet in length in violation of said order. In a suit to recover the fine thus imposed, this court held that the power to regulate railroads included the switches and spurs in use as a part of the railroad system. Railroad Commission v. Kansas City Southern Ry. Co., 111 La. 133, 35 South. 487.

In that case the spur was intended originally to receive more particularly the product of a sawmill which had been destroyed by fire.

By section 6 of Act No. 74, p. 103, of 1902, the right was given to any railroad company, which has acquired or may hereafter acquire the railroad or franchises of any other railway company, to expropriate property for the purpose of extending its line, and for branches, spur tracks, switches, sidings, etc.

This right of expropriating whatever is essential for the operation of railroads as common carriers existed by necessary implication under the laws previously enacted on the same subject-matter. There is no difference in principle between the main track of a railroad and its other tracks necessary to enable the company to properly carry on its business as a common carrier. Section 1479 of the Revised Statutes of 1870 confers on railroad corporations the right to expropriate lands "necessary for their purposes."

Article 272 of the Constitution of 1898 de-

clares that all railroads, constructed and to be constructed in this state, are public highways, and all railroad companies are common carriers; and article 284 creates a commission and vests it with power and authority to make reasonable and just regulations to govern railroad freight and passenger tariffs and service, to correct abuses, and to prevent unjust discrimination. These constitutional provisions dedicate railroad tracks to public use and forbid their operation solely in the interest of individuals. In 1902 the Legislature expressly authorized railroad companies to expropriate land for switch and spur tracks, sidings, etc. Act No. 74, p. 103, of 1902.

Article 271 of the Constitution of 1898 provides in part as follows:

"Every railroad company shall have the right with its road to intersect, connect with or cross any other railroad, and shall receive and transport each other's passengers, tonnage, and cars, loaded or empty, without delay or discrimination."

The argument that this right is restricted to main tracks is supported neither by reason nor authority. The crossing of a main track used for all kinds of traffic is more dangerous and more inconvenient than the crossing of a spur track used only for switching loaded and empty cars. If the one may be crossed, why not the other. The language of the Constitution is general, and embraces all kinds of tracks which may constitute the "road" or "railroad" of the company. If the contention of the defendant were adopted, it would enable one railroad in possession of spur tracks extending through a city or town to exclude all other railroads from the enjoyment of similar terminal facilities by refusing them the privilege of crossing its tracks. This doctrine would practically lead to the establishment of a monopoly in the business of switching freight in car load lots.

In the case at bar the proposed spur track of plaintiff company will reach nine industrial plants already in existence and will be open to public use under the Constitution and laws of this state.

The cases cited by defendant's counsel are scarcely analogous. In one, a railroad company sought to expropriate land' for the purpose of enabling it to lay a lateral track to certain iron works, a few hundred feet distant, for the sole purpose of transporting freights to and from said plant. The court found that this was for the private accommodation of the railroad and steel works, and was not for a public use. 35 Am. & Eng. R. R. Cases, p. 531. In another it was held that a railway cannot exercise the right of eminent domain to establish a private station for an individual shipper. St. Louis, I. M. & S. Ry. Co. v. Petty (Ark.) 21 S. W. 884, 20 L. R. A. 434. In another, the track was intended for the private use of handling freight of a certain brick work. Chicago & E. I. R. Co. v. Wiltse (Ill.) 6 N. E. 49.

In Butte, A. & P. R. Co. v. Montana Union R. Co. (Mont.) 4 Pac. 232, 31 L. R. A. 298, 50 Am. St. Rep. 508, many of the questions raised in this case were carefully considered and adjudicated. In that case the plaintiff sought to expropriate for a branch railway a portion of the right of way of defendant company and also 12 crossings, nearly all of them over spur tracks. The object of the branch line was to reach certain mines, mills and other industries. To the objection that the purpose was private, and not public, the Supreme Court of Montana said:

"The character of a way, whether it is public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised. If all the public have a right to use it, it is a public way, although the number who have occasion to exercise the right is very small. * * * All termini of tracks and switches are more or less beneficial to private parties, but the public character of the use of the tracks is never affected by this"— citing Chicago Dock & Canal Co. v. Garrity, 115 Ill. 155, 3 N. E. 448; Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527, 46 N. W. 75; St. Louis, I. M. & S. R. Co. v. Petty, 57 Ark. 359, 21 S. W. 884, 20 L. R. A. 434.

In Re Chicago & N. W. R. Co., 87 N. W. 852, 56 L. R. A. 244, 88 Am. St. Rep. 918, the Supreme Court of Wisconsin said:

"A brief reference to some of the leading authorities will amply show that the fact that a spur track may run to a single industry does not militate against the devotion of the property thereto being a public use thereof, so long as the purpose of maintaining the track is to serve all persons who may desire it, and all can demand, as a right, to be served without discrimination."

We therefore are of opinion that the exception of no cause or right of action was properly overruled. The plea that defendant's spur tracks were devoted to public use, and therefore that plaintiff company had no right to expropriate crossings over the same, is without merit. The Constitution of 1898 expressly grants such right, which, based as it is on public interest and necessity, has been uniformly recognized and enforced under general statutes conferring the power of eminent domain. Houston & S. Ry. Co. v. Kansas City, S. & G. Ry. Co., 109 La. 581, 33 South. 609.

Defendant company positively refused to entertain or discuss plaintiff's proposition to acquire the crossings in question, and the latter was left to locate the same without notice of defendant's objections as to number or locality. The answer complains that the number of crossings are excessive, but does not suggest what particular crossings are unnecessary. No specific issue of this kind was presented to the jury by the pleadings, but the issue was raised by the evidence submitted to the jury under the charge of the court. The jury, by their verdict, affirmed that all the crossings claimed by the plaintiff company were necessary for the operation of its spur tracks. The issue as to the location and number of crossings was one of fact, and we are not prepared, in the light of the evidence, to overrule in this respect the verdict of the jury. The location of a crossing is presumed prima facie to be correct. Houston & S. R. Co. v. Railroad Co., 33 South. 609, 109 La.

585. Plaintiff company is equally interested with the defendant in securing a safe crossing. Id.

The remaining question is as to damages, and, as defendant owns no right of way beyond the ground covered by its tracks, plaintiff can take nothing beyond the privilege of crossing. This easement must be exercised jointly with the defendant company. The evidence shows that most of the inconvenience and delays apprehended by the defendant may be obviated by mutual agreement of the parties as to the operation of the two systems of spur tracks, the traffic over which will probably amount to but a few trips per day. Plaintiff will be inconvenienced as much as the defendant, and it will be to the interest of both to obstruct each other's use of the crossings as little as possible.

One element of damage is eliminated by plaintiff's declaration to the jury and to this court that it will be compelled to bear the expense of constructing and maintaining the crossings. The general principles of law applicable to the question of damages has been thus stated:

"No damages will be allowed for mere interruption or inconvenience occasioned in the transaction of its business, for increased liability to accident at the crossings, for being required by statute or ordinance to stop at the crossings," and the like. 3 Elliott on Railroads, § 1127.

The same writer says:

"The general rule is that the company whose line is crossed is entitled to recover compensation for everything which renders its property less valuable, causes it additional expense in restoring its property to a safe condition for use, renders it less able to transact its business, or makes the transaction of its business more expensive." Id. "It is the injury which depreciates the value of the property, whether by taking a portion of it or rendering the portion left less useful." Id. note. "The damage must be the natural, necessary, and approximate cause of the taking." Id.

See, also, Lewis on Eminent Domain, § 489.

In the Montana case, cited supra, it was held that the defendants were not entitled to compensation or damages for the interruption or inconvenience occasioned to their business, and that the standard of compensation should be the reasonable value of the common use by plaintiff with defendants of the portions of the latter's right of way occupied by the crossings. Butte, A. & P. R. Co. v. Railroad Co. (Mont.) 4 Pac. 232, 31 L. R. A. 302, 50 Am. St. Rep. 508.

The enormous demand of defendant for damages is based on estimates of its witnesses that the crossings will cause defendant the loss of one-third of the time of its switch crew and the employment of an additional switchman, or $300 per month, and one-half the cost of maintaining the crossings, or $800 per year, making a total of $4,400 per year, equivalent to $88,000, at 5 per cent. interest. The last element is eliminated by the proposition of the plaintiff to bear the entire expense of maintaining the crossings. The others are based mainly on anticipated increased danger of operation and necessity of stopping at and flagging crossings; all elements of inconvenience, rather than of damage.

We cannot understand how the probably limited use of the crossings by the plaintiff company could to any appreciable extent impair the usefulness of defendant's tracks. The resulting inconvenience could, as already stated, be minimized by agreement of the parties in interest. The necessary injury to defendant's property rights is, we think, covered by the amount allowed by the jury, whose verdict we see no reason to increase. In cases of this kind the quantum of compensation is always a difficult one, and perhaps it would be better to leave such questions to a commission of experts, rather than to the jury. But under our present system we must rely largely on the judgment of a jury of freeholders of the vicinage. When, as in the instant case, the jury have inspected the crossings and are presumably familiar with the practical operation of defendant's spur tracks and all the surroundings, we must necessarily attach great weight to their conclusions. In Houston & S. R. Co. v. Railroad Co., 109 La. 581, 33 South. 609, we approved a finding of $200 damages for the crossing of the main track of another railroad, involving the taking of a portion of the right of way not covered by the track. It is true that plaintiff in that case offered to abandon a contract right to cross defendant's Y at another place, provided it secured for a reasonable price the crossing over the main track. This offer was refused by defendant, and the abandonment of the reservation was not made a condition of the verdict and judgment.

In the instant case we think that the judgment should be amended by specifically imposing on the plaintiff the duty of constructing and maintaining the crossings at its own expense. The case was submitted to the jury on this theory, and this obligation, whether voluntarily assumed or arising from some rule of the railroad commission, is admitted by counsel for plaintiff.

The questions of the number, location, and necessity of the crossings were properly left to the jury.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by decreeing that plaintiff company shall construct and properly maintain the seven crossings described in the said judgment at its own cost and expense, and that as thus amended said judgment be affirmed; plaintiff to pay costs of appeal.