MOISE, Justice
(dissenting).
The City of Harahan, the Police Jury, of Jefferson Parish and the Louisiana Highway Department sought to obtain a right of way over the lands of the Illinois Central Railroad. They desired to impose a servitude of way without the payment of compensation. The Illinois Central Railroad resisted such demand on the ground that neither the City of Harahan nor the Police Jury of Jefferson Parish invoked the due process of law clause of the Louisiana Constitution of 1921 for the obtaining of a dedication of a street over and across its tracks, and that the Louisiana Highway Department, which has the power of expropriation, did not seek to expropriate the land and pay compensation for its taking. *292 These bodies wanted the land without the payment of a price, and such action was in direct conflict with Article 1, sec. 2, of the Louisiana Constitution of 1921 which reads:
“No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.”
The three above named government instrumentalities invoked the aid of the Louisiana Public Service Commission, and that commission confirmed a taking without due process of law and without compensation previously made by issuing the following order:
“Required to permit the construction of the railroad crossing involved herein, and that the respondent immediately enter into negotiations with the Louisiana Department of'Highways, the Village of Harahan and the Police Jury of Jefferson Parish and/or any other public body concerned, and thereafter join in the agreements and procedures necessary to effectuate the construction and maintenance of the crossing herein before discussed, * *
Thereupon, the railroad company appealed to the courts to enforce and to maintain and to support the provisions of the Constitution. The Nineteenth Judicial District Court for the Parish of East Baton Rouge issued its temporary restraining order against the enforcement of the ruling of the Louisiana Public Service Commission, and upon hearing, that court issued a permanent injunction. The Louisiana Public Service Commission prosecuted an appeal to this Court, and after a hearing, the majority reversed the judgment of the district court.
I am, therefore, in this dissent not attacking commissions nor officials but a lack of due process of law on their part — not motives but reasons, not judges, but decisions.
The majority opinion bases its ruling on Article 6, sec. 4 of the Louisiana Constitution of 1921; sec. 3 of Article 13 of the same Constitution, and LSA-R.S. 45:-841.
We shall discuss briefly the law in the order named. Article 6, sec. 4 of the Louisiana Constitution of 1921 grants the Louisiana Public Service Commission certain powers which are purely regulatory of the particular carrier herein involved. The Constitution does not grant to the commission power to expropriate property, and when that body confiscates property for the alleged public purposes of the three utilities named, it is done in derogation of the rights and powers imposed on that commission.
This Court passed on the powers of the commission in .the case of River & Rail *294 Terminals, Inc., v. Louisiana Ry. & Nav. Co., 171 La. 223, 130 So. 337, 339, and stated:
“The Louisiana Public Service Commission is a public board, and not a part of the established judiciary system of the state. It is not a court, in any proper sense of that term. The power of eminent domain is not conferred upon the Commission, and it is powerless, by the adoption of any rule or regulation, to take away from the courts of this state their exclusive right to pass upon the question as to what constitutes public utility and public purpose in matters of expropriation.”
The next Constitutional provision is Article 13,' sec. 3, which declares:
“All railroads are hereby declared public highways, and every railroad company shall have the right, with its road, by expropriation, to intersect, connect with, or cross any other railroad, and shall receive and transport the others’ passengers, tonnage and cars, loaded or empty, without delay or discrimination.”
This article of the Constitution is not placed therein for the purpose of making the property of the railroad public as contradistinguished in the majority opinion from private property. The syllabus of the court in the case of Kansas City, S. & G. Ry. Co. v. Louisiana W. R. Co., 116 La. 178, 40 So. 627, 5 L.R.A.,N.S., 512, states:
“All railroads are declared by the Constitution to be public highways and all railroad companies to be common carriers. This declaration applies, not only to main tracks, but also to all subsidiary tracks used for the purposes of railroad traffic.”
The court itself has defined the meaning of this article of the Constitution. It is also in the nature of a benefit to the railroad in its interstate and intrastate transportation. It is for their benefit to expropriate and connect with or cross other railroads, and therefore this declaration in Article 13, sec. 3, Louisiana Constitution of 1921, in no sense relates to the property of the railroad held in perfect ownership.
The majority opinion states that the railroad property is public and not private and that the Constitutional provision applies only to private property and gives this interpretation as a reason for not obeying the Constitutional mandate.
We usually take it for granted that the Constitution commands obedience to its mandates, but under the majority opinion, it is impotent to .protect.
The ■ LSA-Revised Statute, 45:841, Act 132 of 1918, is merely a legal act and cannot supercede or displace a Constitutional mandate.
The interpretation imposed by the Court in the majority opinion of this statute would make the same unconstitutional *296 when it is our duty to uphold the act as constitutional if possible.
The statute reads:
“The Louisiana Public Service Commission shall require the owner, possessor or operator of any railway, railroad * * * crossing any public road already constructed or which may be constructed, to construct and maintain a suitable and convenient crossing over such public road, the crossing to extend to the limits of the right of way, or fifty feet from the center of such railway, railroad * * * in accordance with the standard specifications furnished by the department of highways in respect to such crossings.”
This statute should be considered together with the due process clause of the Constitution and with the rights and powers conferred in the Constitution on the Louisiana Public Service Commission, Article 6, sec. 4, Louisiana Constitution of 1921.
The railroad company makes the issue that neither the City of Harahan nor the Jefferson Police Jury sought to dedicate the property. The majority opinion argues thus:
“Although counsel do not directly challenge the constitutionality of LSA-R.S. 45:841, the question of its validity is inescapable as the proposition advanced by them cannot be answered without determining whether the Act violates Section 2 of Article 1 of the Constitution in that it operates as a taking of part of the railroad right of way for a public purpose without payment of compensation. This is necessarily so because it is clear that the statute neither provides for nor envisions an expropriation of the railroad right of way by the governing authorities charged with the construction of the new work.”
The reason is faulty because the power of the Louisiana Public Service Commission is contained in the Constitution and law. Art. 6, sec. 4, La.Const. of 1921. Can a mere legislative statute which is 'inferior to the Constitution supercede the commandment of Article 1, sec. 2 of the Constitution of 1921 ?
Then the opinion goes on to say:
“We do not think that the position of the railroad is well founded. The fact that the company holds an unencumbered paper title to the land which it uses as its right of way does not warrant the conclusion that it has a perfect ownership as defined by Article 490 of the LSA-Civil Code. * * ”
This reasoning is a deletion of the codal provisions. You cannot acquire a servitude of way except by title, so says the LSA-Civil Code. You cannot have a perfect ownership if property is encumbered, so says Article 490 of the LSA-Civil Code. A perfect ownership has been- defined in law as an unencumbered title.
*298 The business of the railroad is that of a public carrier. The Court in the majority-opinion has construed the statute to mean that the right of way over the company’s land can be had without title. I believe that since that title can be obtained by dedication or by expropriation, the Louisiana Public Service Commission had no right nor power to act until the due process clause had been complied with. That is exactly what was held in the case of Louisiana Ry. & Nav. Co. v. Louisiana Public Service Commission, 165 La. 219, 115 So. 465, 466, when we said:
“The court below found, and we think correctly, that it was unnecessary for it to pass upon the right of the Public Service Commission to force the railway company to construct a crossing over its right of way; that since there had been neither a dedication nor an expropriation the said company cannot be compelled to construct a public road or street over the land owned by it in fee simple.”
It does not take an immensity of common sense to see that if we are to build a house, we must lay a foundation. If we are to take private property for public purposes, the taking must be with compensation previously paid. A foundation must be laid by due process of law.
The railroad urges that the placing of a crossing at the particular point designated is not only handicapping its general business but is actually dangerous to the public for the reason that some twenty to twenty-five freight and twelve passenger trains cross at this point in a normal day, and that it had its yard in the City of New Orleans, and, because of congestion, its yards were removed to Harahan at a great expense. These contentions should be considered in determining whether the course pursued by the Louisiana Public Service Commission was arbitrary.
We are in Louisiana governed by a Constitution. Our public servants have an enterprising ambition to extend power. It is because of -that reason that our Constitution sets forth specific bounds to limit official powers to be exercised and puts defenses around the person, firm, or corporation with respect to their property. The Constitution has likewise established a judicial department of government to see that those limitations imposed by it are not transgressed. The protection sought here is commanded by the organic law and is to be found in Article 1, sec. 2, Louisiana Constitution of 1921: “Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.” (Italics ours.) See entire article for third exception.
The majority opinion makes a fourth exception to the three found in the above provision. By decision, the majority opinion makes the article a formula of words affording no real protection,
For the reasons assigned, I respectfully dissent.