229 So.2d 202 (1969)
LOUISIANA POWER AND LIGHT COMPANY
v.
CITY OF HOUMA.
No. 7800.
Court of Appeal of Louisiana, First Circuit.
November 17, 1969.
Writ Refused December 11, 1969.
Rehearing Denied December 22, 1969.
*204 Eugene G. Taggart, New Orleans, for appellant.
Ralph L. Kaskell, Jr., of Deutsch, Kerrigan & Stiles, New Orleans, for appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Appellant, Louisiana Power & Light Company (LP&L) seeks reversal of the judgment of the trial court dismissing its action to expropriate that portion of the municipally owned electrical distribution system owned by the City of Houma (defendant) and situated outside defendant's corporate limits. The appeal is from the judgment of the trial court sustaining defendant's exception of no cause of action. We find the trial court has correctly resolved the issues presented and affirm its decision.
Plaintiff's petition alleges it is a corporation organized under the laws of this state and is franchised to engage in the business of generating and distributing electrical energy for power in the Parish of Terrebonne. Plaintiff also asserts defendant City owns and operates an electrical distribution system which extends outside the municipal limits into certain unincorporated areas of Terrebonne Parish. Finally, it is urged that plaintiff desires to expropriate all such facilities owned by defendant outside the city limits which expropriation is necessary for a public purpose and in the public interest.
In addition to its exception of no cause of action, defendant filed a declinatory exception of lack of jurisdiction over the subject matter and a peremptory exception of no right of action, both based on the contention plaintiff lacks legal authority to expropriate property of a municipality being used for a public purpose. Defendant also filed declinatory and dilatory exceptions asserting (1) insufficiency of citation, insufficiency of service of process and lack of personal jurisdiction over defendant for failure to obtain an order for trial and serve the pleadings and notice of trial upon defendant, and (2) vagueness for failure to comply with R.S. 19:2.1 in that the property sought to be expropriated is not adequately described.
Defendant's declinatory and dilatory exceptions were not passed upon by the trial court. That tribunal found it unnecessary to pass on the issues presented by these exceptions in view of its dismissal of plaintiff's action on defendant's peremptory exception of no cause of action. It is settled law that such exceptions not decided by a trial court are considered abandoned. Martino v. Fairburn et al., La. App., 71 So.2d 358; McGee et al. v. Finley et al., La.App., 65 So.2d 384; Quinette v. Delhommer, 247 La. 1121, 176 So.2d 399; and Durmeyer et al. v. Streiffer, 215 La. 585, 41 So.2d 226.
The rule is stated as follows in Ducote v. Ducote, 183 La. 886, 165 So. 133:
"Thus, it is a familiar rule of practice that a defendant by not insisting upon a trial of and a ruling on his exceptions waives them."
The mentioned exceptions are therefore considered abandoned.
An exception to the jurisdiction of the court over the subject matter of the litigation is an issue that cannot be waived. Such an exception addresses itself to the authority of the trial court to adjudicate the cause before it. It is, therefore, a matter which may be raised at any time, even by the court on its own motion at any stage of an action.
*205 We find defendant's exception to the jurisdiction over the subject matter without merit. Exclusive original jurisdiction of expropriation actions is vested in the trial courts. La.Const. Article VII, Section 35. In Louisiana Power and Light Company v. Charpentier, La.App., 165 So. 2d 614, an action in which present plaintiff attempted to expropriate privately owned property, it was contended the Public Service Commission rather than the courts, was the proper forum in such instances. In rejecting this argument, we stated in Charpentier, above, as follows:
"The Constitution does not grant the Commission jurisdiction to try expropriation suits. As these suits, between a utility company and individual landowners pertain to expropriation of a right of way, the question of necessity for taking servitude of these properties is vested in the Courts. See Kansas City, S. & G. Ry. Co. v. Meyer, 166 La. 663, 117 So. 765 (1928); Calcasieu & S. Ry. Co. v. Bel, 224 La. 269, 69 So.2d 40 (1953); United Gas Pipe Line Co. v. Blanchard, 149 So.2d 615. (La.App. 1st Cir. 1963)"
It matters not whether the property sought to be expropriated is publicly or privately owned. If the purpose of an action is the expropriation of property for public use, exclusive original jurisdiction of the cause rests in the trial courts. La. Const. Art. VII, Section 35.
Appellant basically contends it possesses authority either expressly or by necessary implication to expropriate municipally owned electric facilities situated outside city limits. Such authority is reputedly conferred by virtue of the provisions of LSA-R.S. 19:2(9), which reads as follows:
"Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:
* * * * * *
(9) Any domestic or foreign corporation created for the purpose of developing and transmitting electricity for power, lighting, heating, or other such uses. The buildings, transmission lines, stations, and sub-stations expropriated or for which property was expropriated shall be so located, constructed, operated, and maintained as not to be dangerous to persons or property nor interfere with the use of the wires of other wire-using companies or, more than is necessary, with the convenience of the land-owner."
Alternatively, appellant maintains that, lacking such authority, either express or implied, it may nevertheless expropriate municipally owned facilities of this nature in any one of the following circumstances, all of which obtain in this case; (1) Where a municipality is engaged in the public utility field as a proprietary function; (2) Where the service rendered by the municipality is voluntary and unregulated, and (3) Where the greater public interest will be served by permitting the condemnor to take property already in public use.
The facts of this litigation are not in dispute. It is either established or conceded that defendant services 290 customers outside its municipal limits. Appellant's rates are approximately 15% lower than those charged by defendant to customers situated outside the municipal limits. The municipal system is deficient in that it has an operating capacity of 25,000 kilowatts and an estimated peak load of 26,600 kilowatts. On one occasion appellant furnished defendant emergency assistance by providing some 8,500 kilowatts of electrical energy. Appellant is a regulated agency and defendant is not. Appellant pays taxes to the Parish of Terrebonne and appellee does not. Appellant is franchised to operate in Terrebonne Parish and appellee has no franchise. Defendant is expressly authorized by law to operate utilities outside its city limits. See LSA-R.S. 33:4162.
LP&L acknowledges applicability of the rule announced in State, Through Department of Highways v. Ouachita Parish School Board, 242 La. 682, 138 So.2d 109.
*206 In the cited authority the Supreme Court stated:
"In determining whether property already devoted to a public use can be subjected to expropriation, the factor to be considered is the character of the condemnor. If the sovereign on its own behalf seeks to acquire such property by eminent domain, the fact that the land sought to be taken is public property generally is immaterial. Ibid, sec. 2.2, pp. 131-132; Jahr, Law of Eminent Domain, sec. 20, p. 37 (1953); Elberton Southern Ry. Co. v. State Highway Dept., 211 Ga. 838, 89 S.E.2d 645; see Township of Weehawken v. Erie Railroad Company, 20 N.J. 572, 120 A.2d 593. If, on the other hand, the sovereign has delegated the power of expropriation to one of its subdivisions or agencies, the rule is that the agency or department cannot expropriate property already devoted to a public use unless the Legislature has authorized it to acquire public property either expressly or by necessary implication. Nichols, op. cit. supra, sec. 2.2, p. 132; Jahr, op. cit. supra, sec. 20, p. 37; Kansas City, S. & G. Ry. Co. v. Vicksburg, S. & P. Railroad Co., 49 La.Ann. 29, 21 So. 144; Borough of Barnegat Light v. Board of Chosen Freeholders of Ocean County, 44 N.J. Super. 332, 130 A.2d 409; see Canzonetti v. City of New Britain, 147 Conn. 478, 162 A.2d 695.
* * * * * *
"The lands are also devoted to a public use, and lands so devoted we think additionally are not subject to condemnation under general powers to that end, but must be specifically by the Legislature itself made subject to such proceedings. Lands so held are usually possessed by the corporations, municipal or private, having also general power of condemnation. To subject such lands to taking by one corporation from another under the general powers of condemnation would be to open the door to recriminatory condemnation litigation without end inasmuch as, if under such authority the first taking would be justified, its retaking would be equally within the power of the adverse party. * * * Property once devoted to a public use cannot be diverted therefrom without express authority of the Legislature."
The quoted language from the landmark Ouachita case, above, establishes the rule that a subdivision or agency of the state does not possess authority to expropriate property in public use unless such authority is expressly conferred or necessarily implied from the language of the legislation granting the right to condemn.
Appellant maintains it is expressly empowered to take property in public use because the statute in question authorizes the expropriation of "buildings, transmission lines, stations and substations". It is argued that "transmission lines, stations and substations" are by their very nature properties which will always be in public use. On this premise it is contended that since municipally owned facilities are not excepted or exempt, the authority granted necessarily extends to any and all such facilities, including those owned by a municipality and devoted to public use.
In effect the trial court held LSA-R.S. 19:2(9) neither expressly nor impliedly conferred upon appellant authority to expropriate publicly owned property in public use, as required by Ouachita, above. Predicated upon Kansas City, S. & G. Ry. Co. v. Vicksburg, S. & P. R. Co., 49 La.Ann. 29, 21 So. 144 (a suit by one railway company to expropriate property of another), the lower court concluded the terms "buildings, transmission lines, stations, and sub-stations" as used in LSA-R.S. 19:2(9) do not expressly denote property dedicated to public use. It appears the trial court held the pertinent statute contemplates either property already expropriated under other statutory authority or electrical facilities which are in private use or have been abandoned.
*207 In addition, on authority of Kansas City, S. & G. Ry. Co., above, the trial court appears to have held property in public use cannot be expropriated. In this regard, our brother below erred. See Ouachita, above. The trial court also held LSA-R.S. 19:2(9) does not necessarily imply the right to expropriate property in public use because such implication must result from an absolute necessity arising from the nature of the circumstances attending each case, which eventuality was not shown by appellant. In this conclusion, we concur for reasons hereinafter shown.
We reject, as did the lower court, appellant's argument that the pertinent statute expressly authorizes expropriation of property already in public use. It is a fundamental rule of statutory construction that expropriation laws are in derogation of common right and are to be strictly construed. Orleans-Kenner E. Ry. Co. v. Metairie Ridge Nursery Co., 136 La. 968, 68 So. 93.
Our review of the holding in Ouachita Parish School Board, above, leads to the conclusion the Supreme Court therein established, at least by inference, the test for determining whether the authority herein sought to be exercised by appellant has been "expressly" conferred. In the cited case we note the following:
"For the purposes of this Part, the highway authorities may acquire private or public property and property rights for controlled-access facilities and service roads, * * *."
"Thus the Legislature has expressly given the highway department authority to expropriate public property for the purpose for which it here seeks to expropriate the school board's property."
From the above we deduce the court held in effect that for such authority to be expressly conferred, the statute must employ or include either the term "public property" or some clear equivalent thereof. We find no such language in the statute under consideration and conclude it does not "expressly" authorize appellant to expropriate property in public use.
Appellant alternatively suggests the statute necessarily implies authority to expropriate property in public use. Unfortunately, Ouachita School Board, above, did not require decision of this question. We have been cited no Louisiana authority in which the term "necessary implication", as applies to the case at hand, has been interpreted. Our independent research discloses no such precedent.
In common law jurisdictions it is generally held such authority does not arise by necessary implication unless it can be clearly inferred from the nature of the improvements authorized, see State of Missouri ex rel. and to Use of Camden County, Mo. v. Union Electric Light & Power Co., 8 Cir., 42 F.2d 692, 698. It is also generally held there can be no such implied authority save that arising from a necessity so absolute that, without it, the grant itself will be defeated or rendered meaningless. Such authority must also arise from the basic nature and function of the agency, over which it has no control; it may not be a necessity created by the agency itself for its own convenience or economy. Pennsylvania R. Co.'s Appeal, 93 Pa. 150.
We find the above stated common law rule logical and practical in application. We apply the rule, however, in the light of our own jurisprudence which dictates that expropriation statutes are to be strictly construed, Louisiana Highway Commission v. Cormier, 13 La.App. 459, 128 So. 56, and the guidelines laid down in Ouachita, above. On this basis, we conclude the implied necessity rule applies in those instances where the language of the statute, together with the legislative creation of the expropriating agency and the nature of the improvements authorized, require authority to expropriate property in public use. An example of this nature is found in Missouri v. Union Electric Light & Power *208 Co., above. In the cited case a dam authority having only general expropriation power was held to have implied authority to take property in public use considering the nature of the improvements authorized. The court there concluded the nature of the authorized improvement, a dam site, necessarily implied authority to create a reservoir resulting in the inundation of property already in public use. The court also held such authority is conferred by implication where the impracticability of constructing the authorized improvements would otherwise result. The rationale of the rule is that under such circumstances, the only logical interpretation is that the legislature intended the agency have such power of condemnation as is necessary to accomplish its purpose.
We also find the implied necessity rule applicable where the grant of authority would otherwise be defeated or rendered meaningless. See Pennsylvania R. Co.'s Appeal, above. We further note the doctrine of implied necessity, where properly applicable, may be invoked irrespective of whether the new use be the same or different from the present use. We so hold because in such instances the determination is made on the basis the legislature has impliedly determined the property may be taken for the purpose authorized, regardless of its nature.
In every instance the applicable tests must be considered in the light of the circumstances of each particular case. Appellant argues the lower court erred in holding the words "transmission lines, stations and sub-stations" used in the statute apply only to facilities privately owned or abandoned. Appellant also maintains use of these terms necessarily implies the right to take any and all such facilities situated outside defendant's corporate limits. The premise is that all such facilities shall, by their nature, always be in public use. Therefore, according to appellant, if these terms have any meaning, it must be intended to apply to facilities in public use.
We agree the trial court erred in holding the cited language applied only to facilities privately owned or abandoned. Appellant, however, does not meet either of the tests which would permit of its taking property in public use under the "implied necessity rule".
We find nothing in the case at bar to indicate that the nature of the improvements authorized (an electrical distribution system with all necessary appurtenances) is such that the legislature must have necessarily conveyed power to appropriate similar systems in public use. Where this test applies, the question of public interest is not open to the courts for decision. The election is made by the legislature at the time of enactment of the statute conferring authority to construct the particular improvement. We judicially note that under its nonexclusive franchise, appellant has constructed and placed in operation a vast system of this nature without exercise of the power herein claimed.
Nor do we find a situation in which a necessity so absolute is presented that, without it, appellant's grant of authority would be defeated or rendered meaningless. By appellant's own admission, it is successfully operating in those areas of Terrebonne Parish outside incorporated municipalities.
The public interest envisioned when franchise rights are defeated or rendered meaningless is availability of the particular service to the public. If denial of the right to take will defeat or render meaningless the ability of the condemnor to make the service available, there is present sufficient public interest to justify the taking. In the instant case these conditions do not exist. First, the service authorized by appellant is being rendered in the area by a competitor lawfully authorized to operate therein. See LSA-R.S. 33:4162. Therefore, the public is not being denied the type of service appellant is authorized to provide. Granted there is competition between *209 the two. Conceded also is the fact that appellant can render a less expensive and more dependable service than appellee. While this is a matter of public interest, it is not, in view of the circumstances of this case, sufficient to justify by implication the right of appellant to condemn similar facilities operated by its competitor. Here the legislature has envisioned competition by granting equal authority to competing agencies to operate in the same area. Neither party has an exclusive franchise. Either may operate in the area despite the presence of the other. Defendant's prior entry into the area may to some extent restrict appellant's ability to compete but it does not render appellant's general operation impossible, neither does it render appellant's franchise meaningless.
While there may be instances involving different circumstances where the claimed power may be found to be necessarily implied under the statute, the circumstances of this case do not meet the test. Each such case must of necessity be determined in the light of its own peculiar facts and circumstances.
We now consider appellant's three alleged exceptions to the general rule that property in public use may not be condemned except upon legislative authority, express or necessarily implied. We first consider the argument that property held by a governmental agency in a proprietary capacity is subject to expropriation as though it were privately owned and not in public use.
In this regard appellant contends the trial court erred in holding the distinction noted between governmental and proprietary ownership applies only insofar as concerns the issue of govermental immunity from tort liability.
Unquestionably defendant is engaged in a proprietary function as regards its ownership of an electrical distribution system. McQuillin on Municipal Corporations, Vol. 12, Par. 35.35; J. B. McCrary Co. v. Town of Winnfield, D.C., 40 F.Supp. 427. Appellant cites State ex rel. Foster v. Kansas City, 187 Kan. 286, 356 P.2d 859, at 861, and State Highway Commission v. City of Elizabeth, 102 N.J.Eq. 221, 140 A. 335, in support of the position that property held by a municipality in a proprietary capacity and already in public use may be expropriated for the same or a different public use under a statute conferring only general power of condemnation.
The authorities cited do not appear to support the position advocated by appellant, at least not where the property in question is in public use. State ex rel. Foster v. Kansas City, above, involved an action by a city to expropriate that part of a township owned water system incorporated into the city limits. In effect the court held those facilities incorporated into the city were not in public use as the township had no authority to operate within the municipality. On this determination, the city was accorded the right of expropriation under a statute conferring general authority to take private property. This situation does not obtain in the case at hand. Here there is no question that the subject property is in public use.
State Highway Commission v. City of Elizabeth, above, was concerned with the taking by a state highway board of public lands in public use for highway purposes. The court equated the condemning authority to the state itself and on this basis permitted taking under a statute giving the highway board the same expropriating power as the state. Present appellant does not fall within this category.
We have not been cited any authority from our own jurispudence in which property held by a governmental agency in a proprietary capacity, and being put to public use, was held subject to the proprietary ownership exception urged by appellant. We consider Ouachita has at least by implication rejected this concept. Seemingly, Ouachita makes no distinction between lands held in a proprietary capacity from *210 those held in a governmental capacity. On its face, Ouachita applies to all lands in public use irrespective of the character in which it is held. The prime factors, according to Ouachita, are the character of the condemnor and the use of the property for a public purpose. Moreover, we see no reason why property held by a municipality in a proprietary capacity but devoted to public use should be subject to a rule of more liberal application than the rule applicable to privately owned property in public use. We see no justification for penalizing a municipality for engaging in a proprietary function expressly authorized by law, which would obtain if we adopt the exception of proprietary ownership urged by appellant.
Appellant's asserted voluntary service exception is based on the premise defendant may decline service arbitarily or terminate service at will; also on the ground the consumers outside the city cannot demand service from defendant. On authority of City of Englewood v. City & County of Denver, 123 Colo. 290, 229 P.2d 667, it is argued such circumstances render defendant's facilities situated outside the city limits subject to expropriation by a public utility under a statute conferring only general authority to take.
Our assessment of Englewood, above, is that it does not support the position urged. In the cited case the municipality of Englewood, which was supplied water by the City of Denver on a voluntary basis, at rates higher than those charged the City of Denver, sought to classify Denver as a public utility amenable to rate regulation by the state's Public Utilities Commission. It was conceded Denver was not required to furnish the service and neither had Englewood the right to demand it. The case did not involve expropriation. It turned solely on the question whether the City of Denver was a public utility subject to rate regulation. The court held Denver did not meet the test of a public utility and therefore its rates could not be set by the Commission.
Here the question is not the rate structure charged by defendant. Nor is the question whether defendant is a public utility. The pivotal issue is whether the property sought to be taken is devoted to a public use. That defendant's property is in public use is not open to question. That such use may be discontinued at any time is a matter of no moment.
Again, we think the ruling in Ouachita is controlling. Ouachita does not appear to contenance an exception based on the voluntary nature of a service. Rather, Ouachita holds the essential factors are the extent of the grant of its condemnation authority, express or implied and the character of the condemnor. Assuming the exception of voluntary service has been adopted in other jurisdictions, we believe its application runs counter to the holding in Ouachita.
In essence appellant's "greater public interest" exception is based on the proposition that property in public use may be expropriated where the best interest of the public will be served or the property put to a "superior and more important use". In support of this position, appellant cites Georgia Southern & Fla. Ry. Co. v. State Road Dept., Fla.App., 176 So.2d 111; El Paso County v. City of El Paso, Tex.Civ. App., 357 S.W.2d 783; Mack v. Eldorado Water District, 56 Wash.2d 584, 354 P.2d 917; State ex rel. Puget Sound & Baker River R. Co. v. Joiner, 182 Wash. 301, 47 P.2d 14; Snellen v. Brazoria County, Tex. Civ.App., 224 S.W.2d 305, and Houston & S. Ry. Co. v. Kansas City, S. & G. Ry. Co., 109 La. 581, 33 So. 609. In further support of this contention, appellant adduced the evidence herein previously mentioned. For present purposes, it suffices to repeat that appellant can furnish adequate, more dependable service at lower rates; that appellant pays taxes on its operations, that appellee can discontinue service at any time and that appellee has inadequate power facilities to meet the needs of its customers. From these circumstances, it is argued the public will benefit from the standpoint of *211 economy and quality and dependability of service.
Georgia Southern & Fla. Ry. Co., above, involved expropriation of a railroad right of way in use. The court held general eminent domain power was sufficient to justify the taking under the "compatible use" rule inasmuch as the taking would not materially affect or interfere with the railroad's operation. Mention in the opinion of a "higher use" test appears to be dicta.
Snellen, above, was concerned with the authority of Brazoria County to condemn part of a boulevard in an unincorporated community for construction of a county owned fire station. Dicta in the cited authority mentions the "superior use" rule notwithstanding the court's finding of an express authority to condemn coupled with application of the compatible use doctrine. We note the court specifically found the taking of a portion of a wide neutral ground would not impair use of the boulevard as a thoroughfare.
El Paso County v. City of El Paso, above, involved the voluntary transfer of lands between governmental agencies. In substance the court held title passed notwithstanding certain statutory deficiencies attending the transaction.
Mack v. Eldorado Water District concerned a dispute between private owners of water permits and a public corporation having similar rights. Expropriation was not an issue. The question resolved was the right of the water district to require removal of a dam erected on its lands by the private owners to divert the volume of water called for in their permit. Finding there was insufficient water to meet the requirements of both permits, the court applied a statutory use test and decided the use of the water district was superior.
State v. Joiner, above, recognizes the "superior use" rule but in final analysis, employed the "compatible use" test. There part of a logging road was taken for a county road. The court held sufficient land remained to the logging company to operate and permitted the taking.
Our independent research discloses the "greater public interest rule" relied on by appellant is recognized at common law as an exception to the rule that power to expropriate property in public use must be express or necessarily implied. The doctrine is based on the premises that one public use may be substituted for another where the proposed use is of so great importance to the public as to require the existing, less important use to yield to it, provided the proposed use cannot be accomplished in any other practical way. See Central Power and Light Co. v. Willacy County, 14 S.W.2d 102, Tex.Civ.App. (1929).
We endorse the rationale of this exception as being logical and meritorious, not because it was allegedly applied in Houston & S. Ry. Co. v. Kansas City, S. & G. Ry., 109 La. 581, 33 So. 609, as contended by appellant. Moreover, we consider this generally recognized common law "exception" to be more properly a third aspect or facet of the "implied necessity doctrine" rather than an exception to the pertinent general rule.
We can readily perceive there may be instances where a statutorily authorized public use may be of such paramount public importance as to justify taking of property devoted to a lesser or inferior use, where the superior use cannot be accomplished in any other practicable manner. In such cases attainment of the legislatively mandated greater public purpose necessarily implies legislative intent to convey such power of taking as is necessary to institute the superior use, even taking of property already in public use.
We also find the greater public interest concept, as an extension of the "implied necessity doctrine" must, in view of Ouachita, be limited to instances where *212 the superior use is different from the use supplanted. This latter determination is made in view of what we consider the clearly implied mandate in Ouachita that recriminatory expropriations are to be avoided as a matter of law. By limiting the public interest concept to differing uses, the possibility of recriminatory expropriation is avoided. Once the determination of superior use is made, it supplants the inferior leaving no ground for retaliation.
For two reasons we find appellant cannot benefit from application of the greater public interest test. First, appellant seeks to use the property for the same purpose in which it is presently being employed. Secondly, appellant's ability to furnish a better, more dependable, less expensive service of the same nature does not fulfill the requirement that the new use must be of so great importance to the public as to necessarily imply authority to take property already in public use for the same purpose. To permit the taking requested would merely supplant one user with another similarly engaged, completely destroying the right of the former to operate though expressly authorized by law to do so. The doctrine in question envisions a public purpose that is widespread, paramount and of general importance. Here, at most, only a small segment of the public will receive relatively minimal benefits.
Neither Houston & S. Ry. Co. v. Kansas City, S. & G. Ry. Co., 109 La. 581, 33 So. 609, nor Shreveport & R. R. Val. Ry. Co., v. St. Louis & S. W. Ry. Co., 51 La.Ann. 814, 25 So. 424, support appellant's argument that the greater public interest concept authorizes taking of property in public use even though it will be devoted by the condemnor for the same purpose.
In Houston, above, the court permitted one railway company to expropriate a crossing over the tracks and right-of-way of another. In Shreveport, above, a longitudinal strip of railroad right-of-way was permitted to be taken for use by another railroad company. In this latter case, the court found the second use not inconsistent with the first and also held the property taken was not in public use because there were no tracks on the land actually taken. In both instances, it is noteworthy that in view of the important public interest involved, both utilities were accommodated in a manner calculated to allow the mutual conduct of an identical public purpose.
Our consideration of the above cited authorities disclose they in effect recognize and apply the common law rule of "compatible use". Georgia Southern & Fla. Ry. Co. v. State Road Dept., 176 So.2d 111; Snellen v. Brazoria County, 224 S.W.2d 305; State ex rel. Puget Sound & Baker River R. Co. v. Joiner, 182 Wash. 301, 47 P.2d 14. In this respect it appears they constitute an exception to the general rule announced in Ouachita. The generally recognized "compatible use doctrine" permits taking under general authority of property in public use even for a similar use, where the second use is compatible with and does not materially interfere with the first, when some important public purpose is thereby served. Since the Houston and Shreveport cases preceded Ouachita, it would appear the Supreme Court had occasion to establish the exception of "compatible use" before announcing the general rule stated in Ouachita. Be that as it may, appellant cannot avail itself of the rule announced in Houston and Shreveport, above, because the taking requested would destroy the present public use and supplant it with one of exact similar nature.
The judgment of the trial court is affirmed at appellant's cost.
Affirmed.